FITZ HENRY HOMER, PLAINTIFF IN ERROR, v. GEORGE L. BROWN.

In April, 1815, William Brown, of Massachusetts, made his will by which he made sundry bequests to his youngest son, Samuel. One of them was of the rent or improvement of the store and wharf privilege of the Stoddard property, during his natural life, and the premises to descend to his heirs. After two other similar bequests, the will then gave to Samuel, absolutely, a share in certain property when turned into money.

In May, 1816, the testator made a codicil, revoking that part of the will wherein any part of the estate was devised or bequeathed to Samuel, and in lieu thereof, bequeathing to him only the income, interest, or rent. At his decease it was to go to the legal heirs.

Under the circumstances of this will and codicil, the revoking part applied only to such share of the estate as was given to Samuel, absolutely; leaving in the Stoddard property a life estate in Samuel, with a remainder to his heirs, which remainder was protected by the laws of Massachusetts until Samuel's death.

At the death of Samuel the title to the property became vested in fee-simple in the two children of Samuel.

One of these children had a right to bring a real action by a writ of right for his undivided moiety of the property.

The writ of right was abolished by Massachusetts, in 1840, but was previously adopted as a process by the acts of Congress of 1789 and 1792. Its repeal by Massachusetts did not repeal it as a process in the Circuit Court of the United States.

A judgment of non pros given by a State court in a case between the same parties, for the same property, was not a sufficient plea in bar to prevent a recovery under the writ of right; nor was the agreement of the plaintiff to submit his case to that

Homer *v.* Brown.

court upon a statement of facts, sufficient to prevent his recovery in the Circuit Court.

The consequences of a nonsuit examined.

(MR. JUSTICE CURTIS, having been of counsel, did not sit in the argument of this case.)

THIS case came up by writ of error, from the Circuit Court of the United States for the District of Massachusetts.

Brown, who was a citizen of Vermont, brought a writ of right to recover an undivided moiety of certain property in Boston. He was one of the two sons of Samuel Brown, and the grandson of William Brown, the testator, the construction of whose will and codicil was the principal point in controversy.

As to part of the demanded premises there was a joinder of the mise. As to another part of the premises a plea of non-tenure on which issue was joined. The verdict on the joinder of the mise was for the plaintiff, the now defendant in error.

Upon the issue on the plea of non-tenure, the verdict was for the tenant, now plaintiff in error.

Before pleading, the tenant submitted a motion that the writ be quashed because writs of right were by the one hundred and first chapter of the Revised Statutes of Massachusetts, abolished.

This motion was disallowed.

At the trial, the demandant put in evidence the will of William Brown, dated 26th April, 1815, and a codicil thereto, dated 30th May, 1816, upon which his claim of title rests.

The substance of the said will and codicil was as follows, the demandant, Brown, claiming under the devise to Samuel L. Brown, his father.

Item: For my youngest child and son, Samuel Livermore Brown, who was born of my last wife, Elizabeth Livermore, I make the following arrangement of property in my estate for him: The property of my first wife has been in some measure mingled in common stock; the property which might otherwise have descended to me by my last wife, Elizabeth, was, after her decease, conveyed by her father, by deed, and by a brother, by will, to her only surviving child, (the 'said Samuel,) which was perfectly consistent with my approbation; and the property, being in land, is sufficient for several farms; and if the said Samuel should quit seafaring pursuits, which he has selected for his employment, and turn his attention to agricultural pursuits, he will not need any addition to his acres, but it may be necessary and convenient to have some annual income to aid him in his labor; therefore I give and bequeathe to my son, Samuel L. Brown, the rent or improvement of my store and

wharf privilege, situate on the northerly side of the town dock, in Boston; he to receive the rent annually or quarterly (if the same should be leased or let) during his natural life, and the premises to descend to his heirs; this being the estate I purchased of Mr. Stoddard — reference to the records will give the bounds. Also, I do hereby direct my son, William, to vest one thousand dollars in bank stock, or the stocks of this State or the United States, the interest of which, as it arises, to be paid by him to the said Samuel during his life, and the stock to descend to the heirs of the said Samuel. This is to be advanced by the said William as some consideration for the difference in the value of the two stores.

(The will then went on to create a fund, which was to be divided into four equal parts, one of which was for Samuel, and then proceeded thus:)

But I do hereby direct my executor, hereafter named, to vest one half of the said Samuel's fourth part of this property in the stock of some approved bank in Boston, or in the stocks of this State or the United States, or in real estate; the dividend or rent to [be] paid by him to the said Samuel as it may arise, and the principal or premises to descend to his heirs; and the other half of this fourth part to be paid to the said Samuel in money, when collected, to stock his farm, or for other purposes.

This will was executed on the 26th of April, 1815.

On the 30th of May, 1816, the testator added the following codicil:

Whereas my son Samuel has sold his two farms which were left to him, one by his late grandfather Livermore, by deed, and the other by his uncle George Livermore, by will; and whereas it appears he has relinquished every intention to agricultural pursuits, and is now absent at sea, with a view to qualify himself for a seafaring life, and, under these circumstances, considering it to be more for his interest and happiness, I do hereby repeal and revoke the part of my will wherein any part of my estate, real or personal, is devised or bequeathed to my son, Samuel, therein named, and in lieu thereof do bequeathe to my son, the said Samuel, only the income, interest, or rent of said real or personal estate, as the case may be, so that no more than the income, interest, or rent of any portion of my real or personal estate, and not the principal of said personal or fee of said real estate may come to the said Samuel, my son, which, at his decease, it is my will that the said real and personal estate snall then go to the legal heirs.

The demandant, George L. Brown, was at the date of his writ, a citizen of the State of Vermont, and made actual entry on the land demanded in his writ, January twenty-ninth, eigh-

teen hundred and fifty-one, claiming an undivided moiety thereof in fee simple against the defendant as in no way entitled to said land.

The demandant maintained that, under and by virtue of the said will and codicil of William Brown, he was entitled, at the death of his father, Samuel Livermore Brown, to one undivided moiety of the demanded premises in fee simple absolute.

The tenant produced the record of a judgment in a writ of entry, brought by the defendant in error against the plaintiff in error in the Supreme Judicial Court of Massachusetts, embracing the premises now demanded, and submitted to that court on an agreement of facts, in which suit judgment of nonsuit was directed by the court; and this agreement of facts and judgment the tenant offered in evidence as a bar or estoppel to the demandant, so far as the premises were identical with those claimed in this writ of right, and moved the court so to instruct the jury.

The tenant put in the deeds of William Brown, Zebiah C. Tilden, Sally Brown, and Samuel Livermore Brown, dated May 5th, 1824, who were the only children and sole heirs at law of William Brown, the testator, and he maintained that the aforenamed grantors were enabled, by virtue of the will and codicil, to pass, and by these deeds did pass, all the title to the demanded premises which the testator had at the time of his death.

The counsel for the defendant then prayed the court to instruct the jury, 1st. That this action cannot be maintained, because writs of right to recover land situate in the State of Massachusetts have been abolished by its laws.

2d. That this action is barred by the judgment of the Supreme Judicial Court of Massachusetts, which was rendered in a case between the same parties and upon the same cause of action; if that judgment be not a bar to this action, the demandant is estopped by his agreement to submit in that case from prosecuting this action.

3d. That the demandant takes nothing under the will of William Brown, and that he has no title to the demanded premises or any part thereof.

4th. That the rights and title of the demandant, and those under whom he claims, in and to the demanded premises, or any part thereof, have been barred by the statute of limitations of Massachusetts.

5th. That on the pleadings and facts in this case, all of which herein before appear, the demandant cannot maintain this action.

But the honorable court did refuse then and there to give the said instructions to the jury, in the terms and manner in which the same were prayed, but did instruct the jury as follows:

That the demandant was entitled to a verdict for that part of the demanded premises as to which the tenants had pleaded the general issue; and that as to that part of the demanded premises to which the tenants had put in pleas of non-tenure, their verdict should be for the tenants.

Whereupon the counsel for the defendant did then and there except to the aforesaid refusals and to the instructions and charge, of the honorable court; and thereupon the jury returned a verdict for the said demandant, in words following to wit: (finding for the demandant on the joinder of the mise and for the tenant on the plea of non-tenure.)

Upon these exceptions, the case came up to this court, and was argued by *Mr. Chandler* and *Mr. Bartlett,* for the plaintiff in error, and by *Mr. Lawrence* and *Mr. Dow,* for the defendant.

I. That the statute of Massachusetts is not a mere act to regulate process, but that it establishes a rule of property and of evidence, and so furnishes a "rule of decision" within the thirty-fourth section of the Judiciary Act, 1789, chapter 20; and in support of this proposition the plaintiff refers to Rev. Sts. of Mass. c. 101; Act of 1786, c. 13; Act of 1807, c. 75; Rev. Stat. of Mass. c. 146; Act of February 20th, 1836, repealing expressly previous acts, Rev. Sts. 814, 821; Rev. Sts. of Mass. c. 119; Report of the Commissioners of Revision of Mass. Sts. part 3d, p. 154; Report of the Commissioners of Revision of Mass. Sts. part 3d, p. 268; Ross *v.* Duval, 13 Peters's R. 45–60; Fullerton *v.* Bank of the United States, 1 Peters's R. 604–613; McNeil *v.* Holbrook, 12 Peters, 84, 88; The Society, &c. *v.* Wheeler, 2 Gallison, 104, 138; Jackson *v.* Chew, 12 Wheaton, 153.

II. The defendant in error takes nothing under the will of William Brown, and has no title to the demanded premises. Baskin's Appeal, 3 Barr, 304.

1. The devise to Samuel L. Brown, under whom the demandant claims the estate, was in the following words: (then followed a recital of the will.)

2. When this will was executed and when it was proved, the statute of Massachusetts of 1791, c. 60, § 3, was in force, and provided that "whenever any person shall hereafter in and by his last will and testament devise any lands, tenements, or hereditaments, to any person for and during the terms of such person's natural life, and after his death to his children or heirs, or right heirs in fee, such devise shall be taken and concluded to vest an estate for life only in such devise, and a remainder in fee simple in such children, heirs, and right heirs, any law, usage, or custom to the contrary notwithstanding."

By the rule in Shelly's case, 1 Coke's Rep. 94, modified in Massachusetts, by the statute of 1791, the Stoddard estate, by the clause of the will just quoted, would have been devised to Samuel L. Brown for life, with remainder in fee to his own heirs.

3. But by the codicil to the will, executed May 30, 1815, the testator, for reasons therein stated, determined to change the character of the original devise, and he then proceeded to "revoke the part of my [his] will wherein any part of my [his] estate, real or personal, is devised or bequeathed to my [his] son Samuel therein named," and in lieu thereof to bequeathe to the said Samuel "only the income, interest, or rent of said real or personal estate, as the case may be, so that no more than the income, interest, or rent of any portion of my real or personal estate, and not the principal of said personal or fee of said real estate may come to the said Samuel, my son, which, at his decease, it is my will that the said real and personal estate shall then go to the legal heirs."

4. Unless the testator intended that the fee of his estate should go to his own heirs, he made no change in the direction of the property whatever, because by the devise in the body of the will, which he wished to change, he had already provided that the fee should go to the heirs of his son.

And the legal construction in such a case is, that the estate goes to those who were the legal heirs at the time of the testator's death. Childs v. Russell, 11 Met. 16; Doe v. Prigg, 8 B. & Cr. 231.

5. The devise in the codicil created a vested remainder in the heirs of the testator; and the plaintiff in error, claiming under the deeds of all the legal heirs, takes the estate. 4 Kent's Com. 202; Fearne on Cont. Remainders, Introduction; Moore v. Lyons, 25 Wend. 119; Doe v. Prigg, 8 Barn. & Cress. 231.

6. The construction of this will involves also the construction of a local statute, namely, the act of 1791, c. 60; and both have been the subject of adjudication by the highest local tribunal, in a suit between the same parties.

This court will, therefore, give effect to that construction and adjudication, to the end that rights and remedies respecting lands may be regulated and governed by one law, and that, the law of the place where the land is situated. Brown v. Homer, 3 Cushing, 390; Jackson v. Chew, 12 Wheaton, 153, 168; Henderson v. Griffin, 5 Peters, 151; Daly v. James, 8 Wheaton, 535; Lane v. Vick, 3 Howard, 464; Society v. Wheeler, 2 Gallison, 137.

The points made by the counsel for the defendant in error, were the following:

First. That as to the first prayer, the writ of right was a proper remedy in this case, because in Massachusetts the writ of right was ever, prior to 1840, a proper remedy in the State courts for a demandant claiming lands therein in fee simple, and having had actual seisin under title coming by purchase. Laws of Massachusetts, Stat. 1786, c. 13, and 1807, c. 75; Jackson on Real Actions, 276, 279, 280; Stearns on Real Actions, 357, 359.

And this remedy became, by the Judiciary Act of Congress of 1789, continued by act of 1792, c. 36, § 2, the proper remedy in like-cases in the Circuit Court of the United States, sitting in and for the District of Massachusetts, in the absence of any rule to the contrary prescribed by said Circuit or the Supreme Court of the United States.

And because c. 101, § 51, of the Rev. Stat. of Massachusetts, abolishing writs of right, and taking effect in 1840, with certain exceptions, has no force *ex proprio vigore* in the courts of the United States, as it relates merely to process. Springer v. Foster, 1 Story's Rep. 602; Judiciary Act of 1789, § 32; Wayman v. Southard, 10 Wheat. 1 – 54; Ficdler et al. v. Carpenter, 2 Woodb. & Minot, 211.

Second. That, as to the second prayer, the judgment of non-suit between these parties in the State court was no bar nor estoppel to the demandant in the court below. Knox v. Waldoborough, 5 Greenl. Rep. 185; 1 Pick. 371; Snowhill v. Hillyer, 4 Halstead, 38; 2 Mass. 113; Bank of Illinois v. Hicks, 4 J. J. Marshall, 128; 16 Mass. 317.

Third. That as to the third prayer, by the following language in the will, " I give and bequeathe to my son, Samuel L. Brown, the rent or improvement of my store and wharf privilege, situate on the northerly side of the town dock in Boston, he to receive the rent annually or quarterly, (if the same should be leased or let,) during his natural life, and the premises to descend to his heirs, this being the estate I purchased of Mr. Stoddard," a life estate, in the premises named, was given to Samuel L. Brown, and the remainder to his heirs, and that this remainder became by the laws of Massachusetts a distinct estate, protected by statute abolishing the rule in Shelly's case, and was contingent till the heirs of the said Samuel were ascertained by his death, occurring January 31, 1831, when it vested absolutely and became a title in fee simple in George L. Brown, the defendant in error, and Josiah Brown, the only children and heirs at law of said Samuel. Laws of Massachusetts, Stat. 1791, c. 60, § 3; Revenue Statutes of same, c. 59, § 9; Richardson v.

Wheatland, 7 Metc. Rep. 169; Holm et ux. v. Low, 4 Metc. Rep. 201; Wheatland v. Dodge, 10 Metc. Rep. 502; White v. Woodbury, 9 Pick. Rep. 136.

Also, that the foregoing gift was not disturbed by the codicil to the will, as to which the burden is on the plaintiff in error to show that it was disturbed.

" To revoke a clear devise the intention to revoke must be as clear as the devise." Doe dem. Hearle et ux. v. Hicks, upon error, 8 Bingham Rep. 475.

"A revocation must be by express words or necessary implication." Per Shaw, Ch. J., arguendo. Lamb v. Lamb, 11 Pick. Rep. 375, 376.

Also, the defendant contends that the revocation in the codicil was carefully guarded and limited, " so that no more than the income, interest, or rent of any portion of my real or personal estate, and not the principal of said personal or fee of said real estate may come to the said Samuel."

And to prevent misapprehension, the testator repeated the devise to the heirs of Samuel, in the will already cited as to " the principal of said personal and fee of said real estate," by the words, "which at his decease it is my will that the said real and personal estate shall then go to the legal heirs," obviously of Samuel, because " his interest and happiness" was the sole object of the codicil.

Also, that the real and personal estate of which the testator had by his will given " more than the income," &c., was the large mass of property, both real and personal, given to the executor in trust to be divided into four equal parts, half of one of which fourth parts was given to Samuel for life, remainder to his heirs; " and the other half of this fourth part to be paid to the said Samuel in money, when collected, to stock his farm, or for other purposes."

And that the revocation in the codicil made, because " Samuel had sold his two farms," was intended merely to revoke the gift to Samuel of this " other half of said fourth part," in terms carrying all the interest therein, to enable him " to stock his farm, or for other purposes."

That besides these interests in such fourth part, and his life interest in the Stoddard lot, (the land in controversy,) the will contains no gift whatever to Samuel, except some trifles in books and clothing.

Fourth. That as to the fourth prayer — if the time of limitation prescribed by the Revised Statutes of Massachusetts, chapter 119, be the governing rule in this case, allowing twenty years from the death of Samuel L. Brown, with ten years after disability removed — the defendant could have brought his action

at any time before February 6th, 1852; but if the act of Massachusetts of 1786, chapter 13, (the only limitation act in force prior to Revised Statutes touching real actions,) be the governing rule in this case, then entry made and action brought before January 31st, 1861, would be sufficient, as to time of entry and action brought.

Fifth. That as to the fifth prayer — on the pleadings and facts in this case — the defendant rightfully recovered in the court below on the following grounds, collectively:

1st. Because he had title in fee simple to real estate, lying within the jurisdiction of the court to which he brought suit.

2d. Because he had actual seisin (see Ward v. Fuller et al. 15 Pick. 185) of the same within the time of limitation allowed by law, and brought his action therefor in season.

3d. Because his writ of right against the tenant in possession of the freehold for the recovery of a fee simple after actual entry, was a proper remedy. Green v. Liter, 8 Cranch, 229; Wells v. Prince, 4 Mass. 64; Hunt v. Hunt, 3 Metc. 175; Jackson on Real Actions, 15; Stearns on Real Actions, 350, 370. As to forms of writs in all actions in Massachusetts, Stearns, 91, 92, 200, 244.

4th. Because, by the Judiciary Act of Congress of 1789, the court below had jurisdiction over the subject of controversy and the parties.

5th. Because no fact in the case for the jury to consider was in dispute between the parties.

6th. Because the pleadings put in issue the whole subject in dispute and passed upon by the court and jury.

7th. Because the opinion of the State court (which seems not to have at all considered the very important and essential feature of the will touching the large mass of real and personal property given in trust to the executor, and divisible in four parts) being upon the construction of a will only, had no binding force in the United States courts, and was entitled only to the confidence created by its reasoning. Lane et al. v. Vick, 3 How. 464; Foxcraft v. Mallet, 4 How. 379; Thomas et al. v. Hatch, 3 Sumn. 170.

8th. That if the judgment in the State court, instead of a nonsuit, had been for the tenant; yet as that action was by writ of entry, it would be no bar to a writ of right, which would be a higher remedy. Stearns on Real Actions, p. 359.

9th. Because the conveyances of Samuel and others worked no forfeiture of the remainder given to the heirs of Samuel. Stearns et ux. v. Winship et ux. 1 Pick. 318; 4 Kent. 255.

Commissioner's notes to Revised Statutes of Massachusetts, pt. 2, c. 59, § 6.

Mr. Justice WAYNE delivered the opinion of the Court.

This cause has been brought to this court from the Circuit Court of the United States for the District of Massachusetts, by a writ of error.

The action is a writ of right. The demandant declares that he has been deforced by the tenant, Fitz Henry Homer, of certain premises claimed by him as his right and inheritance, of which he was seised in fee within twenty years before the commencement of his suit, at the May term of the Circuit Court, A. D. 1851. A motion was made at a subsequent term to quash the writ, upon the ground that the remedy by a writ of right had been abolished by the Revised Statutes of Massachusetts, c. 101, § 51. The court denied the motion. Then the defendant, Fitz Henry Homer, who is tenant of a part of the land demanded, tendered the general issue on a joinder of the mise, on the mere right of the demandant, as to that of part of the land of which the defendant is tenant; with pleas of general non-tenure as to a part of the demanded premises, and of special non-tenure as to the residue. His tender was allowed, and such pleas were filed; upon which the counsel of the demandant joined issue. Subsequently, the defendant asked leave to amend his pleas, by striking out the pleas of the general issue and general non-tenure, as the same had been pleaded, which was permitted, and he filed a plea of joinder of the mise on the mere right, with pleas of non-tenure. The demandant joined issue on the first plea, and filed a replication averring that, from any thing alleged, he was not precluded from having his action against the defendant, because, at the time of suing out his writ, the tenant was tenant of the freehold, as has been supposed in the writ, of all the residue of the demanded premises; and he prayed that the same might be inquired of by the country. Issue having been taken upon the replication, the cause was tried. At the trial, the demandant put in evidence the will of William Brown, dated the 26th April, 1815, with a codicil dated 30th May, 1816, upon which he rested his title. The tenant produced the record of a judgment in a writ of entry, brought by the defendant in error against the plaintiff in error, in the Supreme Judicial Court of Massachusetts, embracing the premises here demanded, and which had been submitted to that court on an agreement of facts, in which a judgment of nonsuit was directed by the court; and this agreement of facts and judgment the tenant offered in evidence as a bar or estoppel to the demandant, so far as the premises were identical with those claimed in this writ of right, and moved the court so to instruct the jury. The tenant then put in the deeds of William Brown, Zebiah C. Tilden, Sally Brown, and Samuel Livermore Brown

dated May 5, 1824, who were the only children and sole heirs at law of William Brown, the testator, maintaining that the grantors were enabled, by virtue of the will and codicil, to pass all the title to the demanded premises which the testator had at the time of his death.

The tenant further moved the court to instruct the jury that the action could not be maintained, because writs of right to recover land in the State of Massachusetts had been abolished by its laws.

Also, to instruct the jury that the demandant took nothing under the will and codicil of William Brown, and that on the pleadings and facts in the case the demandant could not maintain this action. Another instruction was asked, namely, that the rights and title of the demandant, and those under whom he claims to the demanded premises, or any part thereof, have been barred by the Statute of Limitations of Massachusetts. But the counsel for the tenant, now the plaintiff in error in this court, stated in his argument that his other prayers for instruction were not relied upon. The court refused to give either of the instructions just recited, and instructed the jury that the demandant was entitled to a verdict for that part of the demanded premises as to which the tenant had pleaded the general issue; and as to that part of the demanded premises to which the tenant had put in pleas of non-tenure, that their verdict should be for the tenant. The counsel for the defendant excepted to the refusals and to the instructions which the court gave, and the jury returned a verdict for the demandant, "that on the first issue, being the general issue, the jury find that the said George L. Brown hath more mere right to have an undivided moiety of so much of the demanded premises as is thus described (northerly by Clinton street, sixteen feet; easterly by the centre of a brick-wall, dividing the premises from land formerly of D. Packer, deceased, fifteen feet eight inches; southwardly by land, formerly of Savage, now of Homer, the defendant, twenty-three feet, with the appurtenances to him and his heirs, as he hath above demanded the same) than the said Homer has to hold the same as he now holds it, as the said Brown by his aforesaid writ hath above supposed; and that the demandant was seised of the same, as by him in his writ alleged. On the second and third issues, being upon the pleas of general and special non-tenure, the jury find that the said Fitz Henry Homer was not at the date of the writ, has not been since, and is not now, seised as of freehold of any part of the land therein described, as the said Brown by his aforesaid writ hath above supposed."

We think that the remedy by a writ of right for the recovery

of corporeal hereditaments in fee simple, may still be resorted to in the Circuit Court of the United States for the District of Massachusetts, though the same has been abolished in the courts of that State, and that the court did not err in instructing the jury accordingly. Such a remedy existed in the courts of Massachusetts until the year 1840, and it became, by the Judiciary Acts of 1789 and 1792, a remedy in the Circuit Court for that district; any subsequent legislation of the State abolishing it in its courts does not extend to the courts of the United States, because it is a matter of process which is exclusively regulated by the acts of Congress. Wayman *v*. Southard, 10 Wheat. 1. It is as process alone, however, that it continues in the courts of the United States, subject to the limitation prescribed by the Revised Statutes of Massachusetts, as to the time within which such a remedy may be prosecuted in its courts.

The second instruction asked was also properly refused. A judgment of nonsuit is only given after the appearance of the defendant, when, from any delay or other fault of the plaintiff against the rules of law in any subsequent stage of the case, he has not followed the remedy which he has chosen to assert his claim as he ought to do. For such delinquency or mistake he may be *nonpros'd*, and is liable to pay the costs. But as nothing positive can be implied from the plaintiff's error as to the subject-matter of his suit, he may reassert it by the same remedy in another suit, if it be appropriate to his cause of action, or by any other which is so, if the first was not. Blackstone, 295; 1 Pick. 371; 2 Mass. 113.

It is not, however, only for a non-appearance, or for delays or defaults that a nonsuit may be entered. The plaintiff in such particulars may be altogether regular, and the pleadings may be completed to an issue for a trial by the jury; yet the parties may concur to take it from the jury with the view to submit the law of the case to the court upon an agreed statement of facts with an agreement that the plaintiff shall be *nonpros'd*, if the facts stated are insufficient to maintain the right which he claims. The court in such a case will order a nonsuit, if it shall think the law of it against the plaintiff, but it will declare it to be done in conformity with the agreement of the parties, and its effect upon the plaintiff will be preci y the same and no more than if he had been *nonpros'd* for a non-appearance when called to prosecute his suit, or for one of those delays from which it may be adjudged that he is indifferent. The Supreme Court of Massachusetts, in deciding the cause submitted to it, did so in conformity to an agreement between the parties, but its judgment cannot be pleaded as a bar to the suit, though in giving it an opinion was expressed upon the merit of the de-

31 *

mandant's claim under the will of his grandfather, William Brown.

The court was also asked to instruct the jury that the demandant was estopped from prosecuting this action by his agreement in his previous suit to submit it upon a statement of facts. In every view which can be taken of an estoppel, that agreement cannot be such here, because the demandant does not make in this case any denial of a fact admitted by him in that case. He rests his title here to the demanded premises upon the same proofs which were then agreed by him to be facts. This he has a right to do. His agreement only estopped him from denying that he had submitted himself to be nonsuited, or that he was not liable to its consequences.

We come now to the third prayer for an instruction which the court denied. It was that the demandant takes nothing under the will of William Brown, and that he has no title to the demanded premises or any part thereof. The land sued for is a part of what the the testator designates in his will, the estate bought from Mr. Stoddard. He bequeathes the rent or improvement of the store upon it, with the wharf privilege, to his son, Samuel L. Brown, during his natural life, " and the premises to descend to his heirs." It is here said that this bequest and devise was revoked by the testator in the codicil to his will. Care must be taken in the application of the codicil to the will, but in our opinion the testator's intention may be satisfactorily shown from the language which he uses in the codicil, and from its direct connection with one of the bequests in the will to Samuel. The latter will be more readily seen by a recital of all the testator's bequests to Samuel, before we make the application of the codicil to that to which we have referred. The first bequest is that already stated of the rent or improvement of the store and wharf privilege of the Stoddard property. He then directs his son William, as some consideration for the difference in the value of the devise to him over that of his bequest to Samuel, to vest one thousand dollars in stock, the interest of which is to be paid to Samuel during his life and the principal to descend to his heirs. The third bequest to Samuel is one fourth part of a mass of real and personal estate as it is mentioned in the will, and all of his other property not before or hereafter disposed of, as the same may be turned into money, with this direction to his executor, to vest one half of one fourth of it in stock or real estate; " the dividend or rent of which is to be paid to Samuel as it may arise, and the principal or premises to descend to his heirs." The testator then bequeathes to Samuel the other half of that fourth in money when collected to stock his farm or for other purposes. The

difference between this last and the other bequests to Samuel being that he had in all of the others only a life-interest, and in this an unqualified and absolute right. Now, the question is, what qualifications have been made by the testator's codicil of his bequests in the will to Samuel and his heirs, and whether the codicil does not relate exclusively to that bequest of money left to Samuel to stock his farm and for other purposes? That must be determined by the language of the codicil. If that is sufficient to indicate the testator's meaning, we are not permitted to search out of it for an inference of his intention. If it bears directly upon one of his bequests to Samuel in such a way as to change it from an absolute gift into a life-interest, in conformity with the prevalent intention of the testator manifested throughout the body of his will, to leave to Samuel only a life-interest in any part of his estate, except as to that bequest of the one half of one fourth already mentioned to stock his farm and for other purposes, no other application of the codicil can be made to any other bequest in the testator's will.

We learn from the codicil that Samuel had sold his farm between the date of the will and that of the codicil, for the stocking of which the testator had given to him a sum of money. And then the testator states his inducement for making the codicil to be Samuel's apparent relinquishment " of every intention to agricultural pursuits," and that being absent at sea to qualify himself for a seafaring life, he considers it to be more for his interest and happiness to repeal and revoke " the part of my will wherein any part of my estate, real or personal, is devised or bequeathed to my son Samuel therein named," and in lieu thereof to bequeathe to him only the income, interest, or rent of the real or personal estate during his life. Now, excepting the unqualified bequest of the money to stock his farm, the testator had not, in either of his other bequests, left to Samuel any more than the income, interest, or rent of any part of his real or personal estate; declaring that the property or stock from which such rent or income might arise, should go to his heirs. With such corresponding intentions, both in the will and in the codicil, in regard to Samuel, the codicil cannot be considered as a revocation of the former interest given to Samuel for his life, and afterwards to his heirs, unless the testator has used language showing an express intention to exclude Samuel's heirs from that which had been given to him for his life, and afterwards without any limitation to them. That the testator has not done. The only words in the codicil which have been urged in the argument to show that the testator meant to do so, is his uncertain declaration at the end of it, that it was his will that the real and personal estate out of which Samuel was

to have the income during his life, should at his death go to the legal heirs. It was said that these words — the legal heirs — in connection with those immediately preceding, "so that no more than the income, interest, or rent of any portion of his real or personal, and not the fee of said real, may come to the said Samuel," meant nothing, unless they related to the devise of the Stoddard estate, and to the testator's own heirs, because in that devise it had been provided already that the fee should go to the heirs of Samuel.

Without yielding to such a conclusion, it is sufficient for us to say, that the testator had provided that other real estate might be bought out of one half of one fourth of the proceeds of the property left to the executor, in trust to be sold for the benefit of his four children, the rent of which was given to Samuel with a devise of it after his death to his heirs, and that he had given to Samuel absolutely the other half of that fourth, which last he meant by his codicil to revoke and to place upon the same footing with the rest of his estate, the interest or rent of which he bequeathed to Samuel for his life. We have been brought to this conclusion by the language of the testator in his will and codicil. His recital of the causes which induced him to make the codicil, shows that he had a particular part of his will in view, (and not all those parts of it in which he had provided for Samuel,) singly in connection with Samuel, and that it was a consequence of those circumstances (the sale by Samuel of his farm and his intention to follow a seafaring life) which made him consider it to be more for his interest and happiness to revoke that bequest only in which he had given absolutely a sum of money to his son to stock his farm. The words of revocation are: "I do hereby repeal and revoke the part of my will wherein any part of my estate, real or personal, is bequeathed to my son, the said Samuel, and in lieu thereof do bequeathe to my son, the said Samuel, only the income, interest, or rent of said real or personal estate, as the case may be." It is only by changing the words "the part of my will" into the "parts" of my will, that the codicil can be made to bear upon all of those parts of the will in which Samuel had been made for his life the object of that arrangement for him of which his father speaks in that clause of the will which contains the Stoddard bequest. We think, from the language used by the testator, that he has bequeathed and devised to the heirs of Samuel all of the property in which their father was given a life-interest; that the codicil revokes only that clause of the will which contains a bequest of money absolutely to Samuel, and puts it upon the same footing with his other bequests to Samuel, both as respects Samuel and his heirs. The instruction asked by the tenant

was therefore, in our opinion, rightly refused by the court, and we shall direct its judgment in the suit to be affirmed.

### Order.

This cause came on to be heard on the transcript of the record, from the Circuit Court of the United States for the District of Massachusetts, and was argued by counsel. On consideration whereof it is now here ordered and adjudged by this court that the judgment of the said Circuit Court in this cause be, and the same is hereby affirmed, with costs.