## MANHATTAN LIFE INSURANCE CO. *v.* BROUGHTON, Trustee.

IN ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE
SOUTHERN DISTRICT OF NEW YORK.

Argued October 22d, 1883.—Decided November 5th, 1883.

*Evidence—Insanity—Insurance—Judgment—Parties—Statutes—Suicide.*

1. A judgment of nonsuit is no bar to a new action, and of no weight as evi-
   dence at the trial of that action.
2. Pending an action in a court of the State of New York against a corporation
   established in that State, by a widow, a citizen of New Jersey, upon a
   policy of insurance on the life of her husband, the plaintiff assigned the
   policy to a citizen of New York in trust for her benefit, and was after-
   wards nonsuited by order of the court. Upon a subsequent petition by
   the trustee to another court of the State to be relieved of his trust, a citizen
   of New Jersey was at her request appointed trustee in his stead. One
   object of this appointment was to enable a suit on the policy to be brought
   in the Circuit Court of the United States, which was afterwards brought
   accordingly: *Held,* that the suit should not be dismissed under the act
   of 3d March, 1875, c. 137, §§ 1, 5.
3. A self-killing by an insane person, understanding the physical nature and
   consequences of his act, but not its moral aspect, is not a death by sui-
   cide, within the meaning of a condition in a policy of insurance upon his
   life, that the policy shall be void in case he shall die by suicide, or by the
   hands of justice, or in consequence of a duel, or of the violation of any
   law.

The main facts in this case are stated in the opinion of the court. For the purposes of the reported argument below it is sufficient to say that the plaintiffs in error insured the life of one Ferguson for $10,000, payable to his wife in ninety days after proof of his death; that the policy was to be void if Ferguson should die by suicide; that Ferguson hanged himself; that suit was brought in the Court of Common Pleas of the City of New York by the widow to recover on the policy, in which under a ruling of the court the plaintiff became nonsuited; that the claim, after commencement of suit and before nonsuit, was assigned to a trustee, a citizen of New York, to secure a debt; and that after nonsuit the trustee was removed by amicable judicial proceedings, and the defendant in error, a citizen of New Jersey, substituted, the object being to have this suit brought.

*Mr. James Otis Hoyt* for the plaintiff in error.

1. The expression, " in case he shall die by suicide," includes all cases of voluntary self-destruction. If a man takes his life, knowing and intending the consequences of his act, it is his act within the meaning of the policy, and it is immaterial whether he did not know the difference between right and wrong; but if he was so insane that he did not know that his act would kill him, and did not intend it should, it was not his act within the meaning of the policy. The question is whether the self-killing was his own act, and not whether it was his responsible act. This is the law of New York, the *locus* of the contract.

*Van Zandt* v. *Mut. Benefit Ins. Co.*, 55 N. Y. 169; *McClure* v. *M. L. I. Co.*, 55 N. Y. 651; *De Gogorza* v. *Knickerbocker I. Co.*, 65 N. Y. 232; *Weed* v. *Mut. Benefit Ins. Co.*, 70 N. Y. 561.—Of Massachusetts. *Dean* v. *Am. I. Co.*, 4 Allen, 96; *Cooper* v. *Mass. Mut. Ins. Co.*, 102 Mass. 227.—Of Pennsylvania and other States. *Am. L. I. Co.* v. *Isett's Admrs.*, 74 Penn. 176; *St. Louis Mutl. L. I. Co.* v. *Graves*, 6 Bush (Ky.), 268.—Of England. *Borradaile* v. *Hunter*, 5 Man. and G. 639; *Dufaur* v. *Professional Ass. Co.*, 25 Beav. 599.

2. The cases of *Life Insurance Company* v. *Terry*, 15 Wall. 580 ; *Insurance Company* v. *Rodel*, 95 U. S. 232, though seeming to adopt a somewhat different doctrine from the above case, do not go as far as the learned judge below in his charge. There is no evidence of any insane impulse in the case. On the contrary, the evidence shows a deliberately planned and intelligently executed act of suicide.

3. The evidence shows that the plaintiff was made trustee by the Supreme Court of the State of New York, and for the purpose of bringing an action in the United States Court, Mrs. Ferguson having failed to recover under the New York rule. The court below had no jurisdiction ; or if the plaintiff was a citizen of New Jersey, it should not have exercised its jurisdiction, the appointment having been made merely to bring the action where it was supposed a more favorable rule existed than in New York.

4. The same issues involved in this action were tried in the case in the Court of Common Pleas for the City of New York, and the judgment in that case was a bar to the present one and an estoppel. *Krekeler* v. *Ritter*, 62 N. Y. 372. In the event of a recovery by plaintiff, the amount of the judgment in the Court of Common Pleas should be deducted.

*Mr. Erastus F. Brown* for the defendant in error.

MR. JUSTICE GRAY delivered the opinion of the court.

This is an action brought on the 9th of June, 1879, in the Circuit Court of the United States for the Southern District of New York by John G. Broughton, a citizen of Bloomfield, in the State of New Jersey, against a corporation established in the city and State of New York, upon a policy of insurance in the sum of $10,000 on the life of Israel Ferguson, of New York, dated the 15th of June, 1864, made and payable to his wife, and containing a condition that it should be null and void " in case he shall die by suicide, or by the hands of justice, or in consequence of a duel, or of the violation of any law of these States, or of the United States," or of any other country which he might be permitted by this policy to visit or reside in. At the trial the plaintiff offered evidence that Ferguson died

in the city of New York on the 14th of August, 1876, and that presently afterwards his widow and family removed to Red Bank, in the State of New Jersey, and had since had their home there.    He also introduced a deed, dated the 10th of February, 1877, by which Mrs. Ferguson assigned the policy to John G. Nestell, of New York, in trust to pay a claim for $2,000 and the necessary expenses of collecting the amount of the policy, and to invest the surplus for her benefit ; and a record of the Supreme Court of New York, showing that in May, 1879, in a suit brought by Nestell against Mrs. Ferguson to be relieved of his trust, Broughton, the plaintiff, was, upon her request, substituted as trustee in Nestell's stead.    There was evidence tending to show that one object in having Broughton appointed was that a suit could be brought in his name in the United States court.

The defendant, having pleaded in bar a former judgment in an action brought against it upon the policy by Mrs. Ferguson, in October, 1876, in the Court of Common Pleas for the City and County of New York, offered evidence by which it appeared that in such an action the death of Ferguson by hanging himself was proved, and the only question in controversy was whether, and how far, he was insane at the time of his death ; and that upon the defendant's motion the court, in December, 1878, granted a nonsuit, because he was not shown to have been so insane as not to know the physical consequences of his act, and the decision was entered of record in this form :

" Motion for nonsuit granted, and complaint dismissed ; allowance one hundred and fifty dollars to defendant, if further litigation be carried on by plaintiff."

The defendant requested the circuit court to direct a verdict for the defendant, because the former judgment was a bar ; and afterwards objected to the introduction by the plaintiff of evidence of the condition of Ferguson's mind at the time of his death, because that question had been tried and determined in the former action.    The court rightly denied the request, and overruled the objection.    A judgment of nonsuit does not determine the rights of the parties, and is no bar to a new action.

*Homer* v. *Brown*, 16 How. 354. A trial upon which nothing was determined cannot support a plea of *res judicata*, or have any weight as evidence at another trial.

The defendant, at the close of the plaintiff's evidence in chief, and again at the close of all the evidence in the case, moved to dismiss the action for want of jurisdiction, because Broughton had only a nominal interest, and the real controversy was between citizens of New York; and at the argument in this court contended that the action should be dismissed because the evidence showed that the plaintiff was made trustee for the purpose of bringing an action in the United States court, after Mrs. Ferguson had failed to recover in the State court, under the rule established by the recent decisions of the Court of Appeals in *Van Zandt* v. *Mutual Benefit Ins. Co.*, 55 N. Y. 169, and *Weed* v. *Same*, 70 N. Y. 561.

But the case does not fall within the prohibition of the first section of the act of 3d March, 1875, c. 137, 18 Stat. 470, 472; that no circuit court shall have cognizance of any suit founded on contract, in favor of an assignee, unless a suit might have been prosecuted in such court to recover thereon if no assignment had been made; nor within the provision of the fifth section of the same act, authorizing the circuit court to dismiss a suit, upon being satisfied that it does not really and substantially involve a dispute or controversy properly within its jurisdiction, or that parties have been improperly or collusively made or joined for the purpose of creating a case cognizable by that court. *Williams* v. *Nottawa*, 104 U. S. 209. Mrs. Ferguson, the assured and payee named in the policy, was herself a citizen of New Jersey, and as such, if no assignment had been made, might have sued the company in the Circuit Court of the United States; and Broughton, a citizen of the same State, was appointed in the stead of the former trustee, a citizen of New York, not by Mrs. Ferguson's deed in pais, but by a court of competent jurisdiction. Under these circumstances, the mere fact that one object in having him appointed was to enable a suit to be brought in the circuit court is not sufficient to require or justify the construction that he was improperly, and it cannot be pretended that he was collusively, made a

plaintiff for the purpose of creating a case cognizable by that court. The question involved was not a question of local law, but of general jurisprudence, upon which Mrs. Ferguson, and Broughton as her trustee, had a right to seek the independent judgment of a federal court. *Railroad Co.* v. *Lockwood,* 17 Wall. 357, 368; *Myrick* v. *Michigan Central Railroad,* 107 U. S. 102; *Burgess* v. *Seligman,* 107 U. S. 20.

Several minor points suggested at the argument hardly present any question of law.

The interrogatories put by the counsel for the plaintiff to the expert called by the defendants were clearly admissible on cross-examination, for the purpose of testing the knowledge and accuracy of the witness, and require no special consideration.

The instruction requested, that " the only legal test of insanity is delusion," was in direct contradiction of the testimony of the experts called on each side, and could not properly be given as a rule of law.

The court rightly refused to direct a verdict for the defendant on the ground that there was no sufficient evidence to show that Ferguson was insane, or to render the defendant liable upon its contract. Without undertaking to recapitulate the evidence, it is sufficient to say that members of his family, and persons well acquainted with him in his business, testified that he was naturally of a lively, cheerful, sanguine disposition; that in 1874 he met with heavy losses in business, and his son died suddenly by falling from a window; that from that time forward there was a marked change in his demeanor; " he was always walking with his head bowed down, and a gloomy expression, and the entire vitality and cheerfulness which the man had before was gone; " " he was gloomy, dull, mopish; " " he sat down in the office and moaned and would be gloomy there; " " he always complained of his head; he would say, 'The trouble is here; it is all in my head, my head; ' " that shortly before his death he had " a vacant expression in his face; " " he had a queer expression about his eyes; it was sort of a wild, unnatural expression; " " that kind of expression which the human face takes on when one is frightened; a far-off, glassy look, as though the mind was dwelling on nothing; "

that " he was very much changed, and was very excitable; he looked different, and had a wild expression; he staid a great deal by himself when he came home from business; he would go to his room and lie on his bed with his hat and overcoat on, and not come out to his meals." The experts called for the plaintiff testified that Ferguson was suffering from that kind of unsoundness of mind which they termed melancholia. There was clearly some evidence of insanity for the jury, and the question of its weight was for them, and not for the court. *Insurance Co.* v. *Rodel*, 95 U. S. 232.

The remaining, and the most important, question in the case is whether a self-killing by an insane person, having sufficient mental capacity to understand the deadly nature and consequences of his act, but not its moral aspect and character, is a death by suicide, within the meaning of the policy. This is the very question that was presented to this court in 1872 in the case of *Life Ins. Co.* v. *Terry*, 15 Wall. 580. At that time there was a remarkable conflict of opinion in the courts of England, in the courts of the several States, and in the circuit courts of the United States, as to the true interpretation of such a condition. All the authorities agreed that the words " die by suicide," or " die by his own hand," did not cover every possible case in which a man took his own life, and could not be held to include the case of self-destruction in a blind frenzy or under an overwhelming insane impulse. Some courts and judges held that they included every case in which a man, sane or insane, voluntarily took his own life. Others were of opinion that any insane self-destruction was not within the condition.*

* *Borradaile* v. *Hunter*, 5 Man. & Gr. 639 ; *S. C.* 5 Scott N. R. 418 ; *Dormay* v. *Borrodaile*, 10 Beav. 335 ; *Schwabe* v. *Clift*, 2 Car. & K. 134, and *Clift* v. *Schwabe*, 3 C. B. 437 ; *Stormont* v. *Waterloo Ins. Co.*, 1 F. & F. 22 ; *Dufaur* v. *Professional Ass. Co.*, 25 Beav. 599, 602; *Solicitors', &c., Assurance Society* v. *Lamb*, 1 Hem. & Mil. 716, and 2 D. G. J. & S. 251 ; *Breasted* v. *Farmers' Loan & Trust Co.*, 4 Hill, 73, and 8 N. Y. 299 ; *Dean* v. *American Ins. Co.*, 4 Allen, 96 ; *Cooper* v. *Massachusetts Ins. Co.*, 102 Mass. 227 ; *Eastabrook* v. *Union Ins. Co.*, 54 Maine, 224 ; *Gove* v. *Farmers' Ins. Co.*, 48 N. H. 41 ; *St. Louis Ins. Co.* v. *Graves*, 6 Bush, 268 ; *Nimick* v. *Mutual Benefit Ins. Co.*, 10 Amer. Law Reg. (N. S.) 101 ; *Gay* v. *Union Ins. Co.*, 9 Blatchf. C. C. 142 ; *Terry* v. *Life Ins. Co.*, 1 Dillon, 403.

In *Terry's Case* (the trial of which in the circuit court before Mr. Justice Miller and Judge Dillon is reported in 1 Dillon, 403) it was admitted that the person whose life was insured died by poison, self-administered; and the insurance company requested the court to instruct the jury, first, that if he destroyed his own life, and at the time of self-destruction had sufficient capacity to understand the nature of the act which he was about to commit, and the consequences which would result from it, the plaintiff could not recover on the policy; and secondly, that if the self-destruction was intended by him, he having sufficient capacity at the time to understand the nature of the act which he was about to commit, and the consequences which would result from it, it was wholly immaterial that he was impelled thereto by insanity, which impaired his sense of moral responsibility, and rendered him to a certain extent irresponsible for his action. 15 Wall. 581. The circuit court declined to give either of the instructions requested, and instructed the jury in substantial accordance with the first of them only, saying:

" It devolves on the plaintiff to prove such insanity on the part of the decedent, existing at the time he took the poison, as will relieve the act of taking his own life from the effect which, by the general terms used in the policy, self-destruction was to have, namely, to avoid the policy. It is not every kind or degree of insanity which will so far excuse the party taking his own life as to make the company insuring liable. To do this, the act of self-destruction must have been the consequence of the insanity, and the mind of the decedent must have been so far deranged as to have made him incapable of using a rational judgment in regard to the act which he was committing. If he was impelled to the act by an insane impulse, which the reason that was left him did not enable him to resist, or if his reasoning powers were so far overthrown by his mental condition that he could not exercise his reasoning faculties on the act he was about to do, the company is liable. On the other hand, there is no presumption of law, *prima facie* or otherwise, that self-destruction arises from insanity, and if you believe from the evidence that the decedent, although excited, or angry, or distressed in mind, formed the de-

termination to take his own life, because, in the exercise of his usual reasoning faculties, he preferred death to life, then the company is not liable, because he died by his own hand within the meaning of the policy." 15 Wall. 582.

The necessary effect of giving these instructions, after refusing to give the second instruction requested, was to rule that if the deceased intentionally took his own life, having sufficient mental capacity to understand the physical nature and consequences of his act, yet if he was impelled to the act by insanity, which impaired his sense of moral responsibility, the company was liable. That the ruling was so understood by this court is apparent by the opening sentences of its opinion, on page 583, as well as by its conclusion, which, after a review of the conflicting authorities on the subject, was announced in these words:

" We hold the rule on the question before us to be this : If the assured, being in the possession of his ordinary reasoning faculties, from anger, pride, jealousy, or a desire to escape from the ills of life, intentionally takes his own life, the proviso attaches, and there can be no recovery. If the death is caused by the voluntary act of the assured, he knowing and intending that his death shall be the result of his act, but when his reasoning faculties are so far impaired that he is not able to understand the moral character, the general nature, consequences and effect of the act he is about to commit, or when he is impelled thereto by an insane impulse, which he has not the power to resist, such death is not within the contemplation of the parties to the contract, and the insurer is liable." pp. 590, 591.

In *Insurance Company* v. *Rodel*, 95 U. S. 232, the same rule was expressly reaffirmed. In that case the circuit court declined to instruct the jury that the plaintiff could not recover if the assured knew that the act which he committed would result in death, and deliberately did it for that purpose ; and, instead thereof, repeated to the jury the instructions of the circuit court in *Terry's Case*, and the conclusion of the opinion of this court in that case, as above quoted. This court in affirming the judgment, said :

" This charge is in the very words of the charge sanctioned and approved by this court in the case of *Life Insurance Company* v. *Terry*, 15 Wall. 580, including an explanatory clause of the opinion of the court in that case. We see no reason to modify the views expressed by us on that occasion." 95 U. S. 241.

The policies in the cases of *Terry* and of *Rodel* used the words " die by his own hand," instead of which the policy before us has the words " die by suicide." But, for the purposes of this contract, as was observed in *Terry's Case*, 15 Wall. 591, the two expressions are equivalent.

In the present case, the defendant requested the court to instruct the jury " that if Israel Ferguson died by suicide, the plaintiff cannot recover, unless he has proved to your satisfaction that such act of self-destruction was not Ferguson's voluntary and wilful act; that he had not at the time sufficient power of mind and reason to understand the physical nature and consequences of such act, and did not have, at the time, a purpose and intention to cause his own death by the act; " " that unless the evidence established that Israel Ferguson did not commit suicide consciously and voluntarily, the plaintiff cannot recover; " and " that if he thus committed it, it is immaterial whether he was capable of understanding its moral aspects, or of distinguishing between right and wrong."

The court declined to give these instructions, and read to the jury the second instruction refused in *Terry's Case*, and the instructions given therein, as above quoted, and stated that the refusal of the former and the giving of the latter had been approved by this court, and that its decision contained a full exposition of the law, so far as it was necessary to be understood for the purposes of this case, and laid down the rule which would determine them in the application of the evidence which had been introduced; and further instructed them as follows:

" Upon the part of the defendant, an argument based upon the peculiar circumstances surrounding the suicide has been addressed to you, which is deserving of consideration; the various circumstances, showing premeditation, plan, thought, which, it is

very fairly urged, afford quite strong evidence that at the time of his death he was in the full possession of his mental faculties. A serious question, gentlemen, which you will ask yourselves in this case, it seems to me, is this : Had he, in view of his misfortunes, and of the probable future that awaited him, deliberately come to the conclusion that it was better to die than to live, and did he in that view commit suicide ; or was he so far mentally unsound that he could not exercise a rational judgment upon the question of life and death ? Did he become oblivious to the duties which he owed to his family, to his friends, and to himself ? Was he impelled by a morbid impulse which he had not sufficient strength of will to resist, and acting under the influence of this insane impulse, did he determine to take his own life? Because, if his reasoning faculties were so far impaired that he could not fairly estimate the moral consequences, the moral complexion of the act, even though he could reason sufficiently well to prepare with great deliberation, and to execute his design with success, nevertheless, within the authority which I have read, he was so far insane that the plaintiff is entitled to recover on this policy."

These instructions are in exact accordance with the adjudications in the cases of *Terry* and *Rodel ;* and upon consideration we are unanimously of opinion that the rule so established is sounder in principle, as well as simpler in application, than that which makes the effect of the act of self-destruction, upon the interests of those for whose benefit the policy was made, to depend upon the very subtle and difficult question how far any exercise of the will can be attributed to a man who is so unsound of mind that, while he foresees the physical consequences which will directly result from his act, he cannot understand its moral nature and character, or in any just sense be said to know what it is that he is doing.

If a man's reason is so clouded or disturbed by insanity as to prevent his understanding the real nature of his act, as regards either its physical consequences or its moral aspect, the case appears to us to come within the forcible words uttered by the late Mr. Justice Nelson, when Chief Justice of New York, in the earliest American case upon the subject : " Speaking

legally also (and the policy should be subjected to this test), self-destruction by a fellow being bereft of reason can with no more propriety be ascribed to his own hand than to the deadly instrument that may have been used for the purpose;" and, whether it was by drowning, or poisoning, or hanging, or in any other manner, "was no more his act, in the sense of the law, than if he had been impelled by irresistible physical power." *Breasted* v. *Farmers' Loan & Trust Co.*, 4 Hill, 73, 75.

*Judgment affirmed.*