*In re* CARD'S WILL.

*(Supreme Court, General Term, Third Department.* December 28, 1889.)

WILLS—CAPACITY—EVIDENCE—SUICIDE.
　　Suicide is not presumptive evidence of insanity on the issue of testamentary capacity, but is a circumstance to be considered in connection with others.

Appeal from surrogate's court, Rensselaer county.

Proceedings for the probate of a paper purporting to be the will of John Card, deceased. The formal execution of the instrument was duly proved, but its probate was contested by Jane Le Barron, daughter of deceased, upon the ground of the alleged want of testamentary capacity of the testator. The surrogate admitted the will to probate, and contestant appeals.

Argued before LEARNED, P. J., and LANDON and INGALLS, JJ.

*James Lansing,* for appellant. *McClellan & McClellan,* (*Robert H. Mc-Clellan,* of counsel,) for respondent, executor.

LANDON, J. We are satisfied that the testator had sufficient testamentary capacity. He was not insane. He was not suspected to be insane by the members of his family, or by any one else, during his life-time. He committed suicide, leaving a will which disappointed the expectations of the contestant. He had had occasional epileptic attacks. He was 81 years of age at the time of his death. Had, with the exception of the last three years of his life, been an active, industrious, economical, and cheerful man. He was a farmer. His wife died five years before him. Two years later he sold his farm, and went to live with his daughter and her husband, paying them $3,000 in consideration of their undertaking to support him during his life. He had about .$7,000 besides. From a life of activity he thus passed to one of comparative inaction, and he became discontented, occasionally fretful, morose, and melancholy. It is urged that he was laboring under delusions. We see no evidence of it. Doubtless he was often wrong in his constructions of facts, and his conclusions upon them; but his perceptions were of realities, not of the images created by a diseased mind. He made his will about 20 days before his death. It was drawn pursuant to his dictation. It is clear from it and from the other testimony that he clearly comprehended the extent of his estate, and of the claims of his children and their descendants upon his bounty. Five of his children were living, and two were dead, leaving children and grandchildren. With the exception of the contestant, his daughter with whom he was living, and to whom he had given $3,000 for his support, his will divides his estate among his living children and some of the descendants of the two who were dead. About three years before his death he had made a will in which the same children were provided for and the contestant omitted. That will was destroyed when this was made. The present will was obviously made upon full deliberation, and with the conviction that he had, by the provision allowed to the contestant for his support, discharged in full her claims upon his bounty.

Great stress is laid upon the fact that he committed suicide. But it is obvious that he grew weary of life, and resolved to end it. His frequently expressed belief was that there is no hell except the grave. Suicide is competent evidence upon the issue of insanity, but only as a circumstance in connection with others, and is not presumptive evidence of it. Best, Ev. 729; Ray, Insan. 487. The Penal Code declares the attempt to commit suicide a felony, (section 178,) thus presuming sanity. In life insurance cases the recovery, when death is caused by suicide, often turns upon the issue whether :suicide was the result of sanity or insanity. *Breasted* v. *Trust Co.,* 8 N. Y. 299; *Insurance Co.* v. *Broughton,* 109 U. S. 121, 3 Sup. Ct. Rep. 99. The natural love of life, and the "dread of something after death," are usually

such deterrents as to suggest insanity when suicide is attempted or accomplished. But the suggestion is greatly enfeebled when a man has reached that stage when the usual tenor of his long life is wholly changed, when no resources of enjoyment are left, when the present is full of vexations, and the future without hope or promise; with nothing to enjoy in this life, and nothing to fear in the next. If, then, a man deliberately, by his will, bestows his estate among his kindred according to his affection or sense of duty, and takes his life, it is plain that he thus acts, not because he is destitute of reason or of the capacity to reason, but because he does reason, and has the courage of his convictions. The epileptic attacks with which the testator was occasionally seized do not appear to have been very severe. · They certainly do not appear to have weakened the force of his will. His memory was weaker than in his earlier life, and less coherent, but the testimony in this respect falls far short of showing any unusual degree of impairment.

Hypothetical questions, embracing the most marked feeblenesses, changes in his habits, his apathies, petulances, and peculiarities, including his epileptic seizures and his suicide, were asked of several physicians, and they answered that they thought him insane. His neighbors and acquaintances, who had known him intimately for many years, had conversed with him often, some of them on the very day of his suicide, had never observed anything in his action or speech which had occurred to them as being irrational. His suicide was wholly unexpected by all who knew him. Such hypothetical questions present one side of the man's life. They present no full and fair view to the mind of the expert. Without questioning the fairness or intelligence of the answer, we may gravely question the fullness and fairness of the hypothesis, and may judge the answer by the omissions in as well as the contents of the hypothesis. We prefer to judge the man by the testimony of his neighbors and acquaintances.

Some exceptions are taken to the rulings of the surrogate upon the testimony offered. We find none which call for a reversal of the decree. The decree of the surrogate is affirmed, with costs. All concur.