---

### RAMSAY *v.* RYERSON.

*(Circuit Court, E. D. New York. December 27, 1889.)*

**1. CRIMINAL CONVERSATION—FACTS NECESSARY TO BE SHOWN.**

In an action for criminal conversation, where the act of adultery is not shown by direct proof, the plaintiff must show—*First*, a disposition to illicit intercourse on the part of the wife; *second*, a disposition to illicit intercourse with the wife on the part of the defendant; and, *third*, opportunity to gratify such mutual disposition.

**2. SAME.**

In such cases the rule is that when the evidence is as capable of an interpretation which makes it consistent with the innocence of the accused party as of one consistent with his guilt, the meaning must be ascribed to it which accords with his innocence rather than that which imputes to him a criminal intent.

**3. SAME—EVIDENCE—PRESUMPTION FROM FAILURE TO INTRODUCE.**

If the weaker and less satisfactory evidence is given and relied on in support of a fact, when it is apparent that proof of a more direct and explicit character was within the power of the party, it will be presumed that if the more perfect exposition had been given it would have laid open deficiencies and objections which the more obscure and uncertain testimony was intended to conceal.

**4. SAME—SUFFICIENCY OF EVIDENCE.**

The circumstance upon which plaintiff especially relied in support of the inference that defendant was disposed towards improper intercourse with the wife was the discovery of two letters which plaintiff claimed were written by defendant. The letters were unsigned, were not shown to have ever been in defendant's possession, and were sought to be connected with him only by proof as to handwriting. Besides defendant's testimony denying the writing of the letters, two witnesses who had known defendant, and had business transactions with him, for 25 years, testified positively to the opinion that the letters were not in defendant's handwriting. In opposition to this testimony there appeared only the plaintiff himself. His only knowledge of defendant's handwriting was derived from having once seen him fill up an insurance policy, from having once received an itemized bill from him, and from having several times seen him make entries in his books. *Held,* that the evidence was insufficient to establish the fact that defendant wrote the letters.

At Law.

Motion for a new trial in action for criminal conversation, the jury having given plaintiff a verdict for $2,500.

*Benno Loewey,* for defendant.

(1) Where a wrong is charged wherein there is moral turpitude, there is a presumption of innocence. *Morris* v. *Talcott,* 96 N. Y. 100; *Jaeger* v. *Kelley,* 52 N. Y. 274; *Pollock* v. *Pollock,* 71 N. Y. 137; *Crook* v. *Rindskopf,* 105 N. Y. 476, 12 N. E. Rep. 174. (2) A verdict influenced by prejudice, misapprehension, or improper motives on the part of the jurors should be set aside as against the weight of evidence. *Corning* v. *Factory,* 44 N. Y. 577; *Wilkinson* v. *Greely,* 1 Curt. 63; *Childs* v. *Railroad Co.,* 20 Law Rep. 561; *Cady* v. *Insurance Co.,* 18 Int. Rev. Rec. 30; *Stafford* v. *Hair-Cloth Co.,* 2 Cliff. 82; *Fuller* v. *Fletcher,* 6 Fed. Rep. 128; *Pollard* v. *Railway Co.,* 62 Me. 93; *Clark* v. *Bank,* 8 Daly, 481; *Cruikshank* v. *Bank,* 26 Fed. Rep. 584. (3) Where all the witnesses to a fact are equally trustworthy, the court will

be governed rather by the means of knowledge they possess than by their number. *Taylor* v. *Harwood,* Taney, 437. (4) Expert testimony must be received and acted upon with caution. *U. S.* v. *Pendergast,* 32 Fed. Rep. 198. (5) A plaintiff being now permitted to state his own case as a witness, ought, when he is conversant with all the facts, to be able to make his right of action entirely clear. *Meddaugh* v. *Bigelow,* 67 Barb. 106; *Lynch* v. *Pyne,* 42 N. Y. Super. Ct. 11; *Corney* v. *Andrews,* 14 N. Y. St. Rep. 672. (6) Error in the charge is ground for a new trial. *Scott* v. *Lunt,* 7 Pet. 596; *U. S.* v. *Beaty,* Hemp. 487; *Emerson* v. *Hogg,* 2 Blatchf. 1. (7) What constitutes interest in a witness. *Bork* v. *Norton,* 2 McLean, 422; *Burroughs* v. *U. S.,* 2 Paine, 569; *Moran* v. *McLarty,* 75 N. Y. 25; *Fralick* v. *Stafford,* 11 Wkly. Dig. 327; *Sharon* v. *Hill,* 26 Fed. Rep. 337. (8) The effect of interest in a witness. *Newton* v. *Pope,* 1 Cow. 110; *Elwood* v. *Telegraph Co.,* 45 N. Y. 554; *Nicholson* v. *Conner,* 8 Daly, 212; *Kavanagh* v. *Wilson,* 70 N. Y. 179; *Andrews* v. *Hyde,* 3 Cliff. 516. (9) Failure to call a producible witness. *U. S.* v. *Schindler,* 10 Fed. Rep. 547; *Clifton* v. *U. S.,* 4 How. 242. (10) Hostile relations between a witness and the party against whom he is called, a proper subject of charge. *Starr* v. *Cragin,* 24 Hun, 177; *Newton* v. *Harris,* 6 N. Y. 345; *Patterson* v. *People,* 12 Hun, 140. (11) Condonation a bar to actions against the paramour. *Norris* v. *Norris,* 30 Law J. Div. & Matr. 111; *Aitken* v. *Macree,* 15 Fac. Col. 562, 2 Shaw, Dig. 842; *Adams* v. *Adams,* 36 Law J. Div. & Matr. 62, L. R. 1 Prob. & Div. 333. (12) Condonation as affecting husband's testimony as to guilt. *State* v. *Marvin,* 35 N. H. 22; *Timmings* v. *Timmings,* 3 Hagg. Ecc. 76; *Phillips* v. *Phillips,* 1 Rob. Ecc. 160; *Cook* v. *Wood,* 76 Amer. Dec. 677; *Hodges* v. *Windham,* Peake, 53. (13) Negligence of plaintiff in these cases. *Bunnell* v. *Greathead,* 49 Barb. 106; *Duberley* v. *Gunning,* 4 Term R. 657; *Winter* v. *Henn,* 4 Car. & P. 494; *Calcraft* v. *Earl of Harborough,* Id., 499; Reeve, Dom. Rel. (3d Ed.) 140; *Seagar* v. *Sligerland,* 2 Caines, 219; *Travis* v. *Barger,* 24 Barb. 614. (14) Measure of damages. *Leeds* v. *Cook,* 4 Esp. 256; *Ferguson* v. *Smethers,* 70 Ind. 519; *Cowing* v. *Cowing,* 33 Law J. Div. & Matr. 150; *Dain* v. *Wycoff,* 7 N. Y. 191; *Blunt* v. *Little,* 3 Mason, 106.

*Z. M. Ward,* also, for defendant.

(1) The verdict resting wholly on the testimony of a party which is opposed by that of disinterested and unimpeached witnesses should be set aside. *Pollard* v. *Railway Co.,* 62 Me. 93. (2) In doubtful cases, the hypothesis of innocence should prevail. *Mayer* v. *Mayer,* 21 N. J. Eq. 246. (3) New trial will be granted where the verdict is against the weight of evidence, although there was testimony on both sides. *Manufacturing Co.* v. *Foster,* 51 Barb. 350; *Adsit* v. *Wilson,* 7 How. Pr. 64; *Kinne* v. *Kinne,* 9 Conn. 102; *Brown* v. *Frost,* 2 Bay, 126; *Curtis* v. *Jackson,* 13 Mass. 506; *Byron* v. *Beal,* 7 Atl. Rep. 601; *Dexter* v. *Toll-Bridge Co.,* 12 Atl. Rep. 547; *Reclamation Co.* v. *Cunningham,* 71 Cal. 221, 16 Pac. Rep. 711; *Bell* v. *Shields,* 19 N. J. Law, 93; *Corlies* v. *Little,* 14 N. J. Law, 373; *Boylan* v. *Meeker,* 28 N. J. Law, 274; *Windmuller* v. *Roberston,* 23 Blatchf. 233, 23 Fed. Rep. 652.

*George F. Elliot,* for plaintiff.

(1) A strong preponderance of evidence against the verdict is not enough to warrant setting it aside. *Hickenbottom* v. *Railroad Co.,* 15 N. Y. St. Rep. 11; *Morss* v. *Sherrill,* 63 Barb. 23; *Beckwith* v. *Railroad Co.,* 64 Barb. 299; *McKinley* v. *Lamb,* Id. 199; *Cheney* v. *Railroad Co.,* 16 Hun, 415; *Pope* v. *Allen,* 10 Reporter, 783; *Bills* v. *Railroad Co.,* 84 N. Y. 10; *Emberson* v. *Dean,* 46 How. Pr. 236; *Brooks* v. *Moore,* 67 Barb. 393; *Clark* v. *Bank,* 8 Daly, 481; *Waters* v. *Insurance Co.,* 7 Reporter, 456; *Fuller* v. *Fletcher,* 11 Reporter, 601; *McCann* v. *Meehan,* 13 Reporter, 224; *Archer* v. *Railroad*

*Co.*, 13 N. E. Rep. 318; *Ilsley* v. *Keith*, 9 N. Y. St. Rep. 828; *Redlein* v. *Railroad Co.*, 7 N. Y. St. Rep. 264; *Reitmeyer* v. *Ehlers*, 9 N. Y. St. Rep. 63; *Mulholland* v. *Mayor*, 9 N. Y. St. Rep. 85; *Archer* v. *Railroad Co.*, 106 N. Y. 602, 13 N. E. Rep. 318. (2) Where the evidence is contradictory, the finding of the jury is conclusive. *Finney* v. *Gallaudet*, 2 N. Y. Supp. 707; *Miller* v. *O'Dwyer*, 1 N. Y. Supp. 618; *Cummings* v. *Vanderbilt*, Id. 523; *Smith* v. *Inhabitants*, (Me.) 13 Atl. Rep. 890; *Purinton* v. *Railroad Co.*, (Me.) 7 Atl. Rep. 707; *Byron* v. *Beal*, (Me.) Id. 601; *Nash* v. *Somes*, (Me.) 10 Atl. Rep. 447. (3) Verdict should not be set aside for excessive damages, unless jury were plainly influenced by passion or prejudice. *Eppendorf* v. *Railroad Co.*, 69 N. Y. 195; *Avery* v. *Railroad Co.*, 2 N. Y. Supp. 101. (4) New trial should not be granted, although some mistakes have been made, if, on the whole, the verdict be substantially right, and justice have been done. *McLanahan* v. *Insurance Co.*, 1 Pet. 170; *Hunt* v. *Pooke*, 1 Abb. (U. S.) 556. (5) Generally, as to setting aside verdicts. *Folsom* v. *Skofield*, 53 Me. 171; *Price* v. *Evans*, 4 B. Mon. 386; *Jossey* v. *Stapleton*, 57 Ga. 144; *Kightlinger* v. *Egan*, 75 Ill. 141; *Miller* v. *Balthasser*, 78 Ill. 302; *McAlexander* v. *Puryear*, 48 Miss. 420; *Wiggin* v. *Coffin*, 3 Story, 1; *Peck* v. *Land*, 2 Ga. 1.

LACOMBE, J. It is apparent from the verdict that the jury discredited the testimony both of the defendant and of the plaintiff's wife. In discussing the question, therefore, whether the verdict is, as defendant claims, against the weight of evidence, such testimony will be entirely disregarded by the court. When, however, the jury discredited the defendant's testimony, they did not thereby put the case in the same condition as if the defendant had not testified at all. Still less did they thereby alter the issues raised by the pleadings. The defendant's side of the story was not practically abandoned because of any failure on his part to sustain it with his oath; and, under the pleadings, the burden rested upon the plaintiff to show affirmatively, by competent and sufficient legal proof, that between April and October, 1887, his wife committed adultery with the defendant. If the proof were insufficient to establish that charge, the jury were not at liberty to supply any defects in such proof by inferences from outside; nor were they warranted in assuming that because they decided the defendant's narrative to be false they were entitled to jump to the conclusion that the converse of such narrative must be true, without any further examination of the testimony. In actions of this character, where the act of adultery is not shown by direct proof, the plaintiff must show—*First*, a disposition to illicit intercourse on the part of the wife; *second*, a disposition to illicit intercourse with the wife on the part of the defendant; and, *third*, opportunity to gratify such mutual disposition. It must be shown that a criminal attachment subsisted between the wife and the defendant, and that they had an opportunity to gratify their unlawful passion. *Pollock* v. *Pollock*, 71 N. Y. 137. The jury were so charged, and in plain and unmistakable terms were told that, while they might find these three essentials as inferences from facts, they must, in drawing such inferences, use only the facts in proof.

The evidence, if any, as to the first of these essentials need not now be discussed. This motion will be considered solely in the light of such evidence as affects the defendant. The circumstance upon which plain-

tiff especially relied in support of the inference that defendant was disposed towards improper intercourse with the wife was the discovery of the two letters, Exhibits A and C. The plaintiff claimed that these were written by defendant, and that therefore the jury might take them into consideration when drawing inferences as to defendant's disposition. The letters were unsigned, were not shown to have ever been in defendant's possession, and were sought to be connected with him only by proof as to handwriting. Not counting the defendant, who denied writing them, but whose testimony, as above indicated, the jury did not credit, there were three witnesses, and three only, examined on this point. De Baum, who had known defendant, and had business transactions with him, for over 25 years, and was quite familiar with his handwriting, testified positively to the opinion that A and C were not in defendant's handwriting. Lydecker, who had known him for 30 years, had repeated business transactions with him, and who was in no way interested in the result of this suit, also testified to the same effect. In opposition to this testimony there appeared only the plaintiff himself. · His only knowledge of defendant's handwriting was derived from having once seen him fill up an insurance policy, from having once received an itemized bill from him, and from having several times seen him, in the country grocery store which he kept at Ramsays', N. J., make entries in his books. Enlightened by such measure of experience, he expressed the opinion that Exhibits A and C were written by the defendant. And, though he, as well as the defendant, had lived at Ramsays' all his life, he did not call a single witness from the many persons in that place who must be entirely familiar with defendant's handwriting. If this action were one to recover a liquidated amount upon a written obligation for the payment of money, the authenticity of which was in dispute, it is incredible that a single one of these twelve jurymen, who presented the outward seeming of intelligent business men, would have found such proof sufficient to establish the genuineness of the document sued upon. That they reached a different conclusion as to the documents in this case, and their verdict seems to indicate that they did so, resulted, probably, from an acute attack of that species of mental hysteria to which jurymen in sexual cases are so peculiarly liable. Besides these letters, the only circumstances relied on by the plaintiff as sustaining the inference that defendant had a disposition towards illicit intercourse with the wife are · these: It appeared that defendant made repeated visits to the house of defendant while the latter was absent in New York. It also appeared, however, that he always called there to deliver butter or groceries, in the ordinary transaction of his business. Mrs. Tenure, the only witness to these visits, says that he came on business, to deliver goods, and did not stay more than 10 minutes, at the longest. It was shown that on one occasion he brought to the house a package of groceries under the string of which was a letter; but it also appeared that defendant was postmaster, and occasionally left his customers' mail with their groceries. The witness Mrs. Tenure also testified that the plaintiff's little boy came out of his mother's room and into witness' room, when defendant came, which

was only on Saturday mornings; but she also admitted that in the winter-time the boy came into her room nearly every day, and that in the summer-time he was always out of doors; and it was with the period from April to October only that the complaint is concerned. The same witness also testified that on one occasion defendant stopped in front of the house in a sleigh and she heard him say to the plaintiff's wife, who had gone to the gate, in a low voice,—not exactly a whisper, but a low voice,—"We are watched;" but the same witness also admits that she, the observer and reporter of this conversation, was at the time at the window of her own room,—a distance, according to her own statement, of from 100 to 150 feet. Except for the letters, there is absolutely nothing else on this branch of the case. Such evidence, standing alone, is altogether too feeble to support the inference which the jury seem to have drawn from it, especially in view of the fact that the offense charged against the defendant is a crime,—an offense involving moral turpitude. In such cases the rule is well settled that when the evidence is as capable of an interpretation which makes it consistent with the innocence of the accused party as with one consistent with his guilt the meaning must be ascribed to it which accords with his innocence rather than that which imputes to him a criminal intent. *Morris* v. *Talcott*, 96 N. Y. 100; *Jaeger* v. *Kelley*, 52 N. Y. 274; *Pollock* v. *Pollock*, 71 N. Y. 137; *Crook* v. *Rindskopf*, 105 N. Y. 476, 12 N. E. Rep. 174.

The only remaining evidence of the case is that tending to show opportunity. The plaintiff testified that, suspecting his wife's unfaithfulness, he followed her one morning, accompanied by a young man, a stranger, whom he hired for the occasion. That he saw her enter the Cosmopolitan Hotel, by the ladies' entrance. Thereupon he entered the hotel himself, by the main entrance, into the restaurant; thence went to the clerk's desk, looked over the register, to see if he could trace any names, stated his case to the clerk, who referred him to the proprietor, found the latter, and, with his permission, accompanied by the clerk, went upstairs, into the hallway outside of room No. 59. The door of No. 59 was shut, but through the fan-light over the top he heard voices within, one of these voices being that of his wife. He understood what was said, but did not state it, not being asked by either side so to do. He then left the hall-way, returning, after a considerable time, with a detective and the young man. They took post in a room adjoining, and, after another long interval, entered room 59, which they found untenanted, the bedclothes tumbled, a champagne bottle and two wine glasses standing on the table, and his wife's parasol in the fire-place. On his way home that evening he met his wife on the train. He did not see the defendant that day, except, perhaps, at Ramsay's in the evening. With regard to this narrative, two suggestions are pertinent. In the first place, it is testified to only by the plaintiff. Himself an interested witness, he does not seek to corroborate his statements by the evidence of the young man, the clerk, the register, the proprietor, or the detective, nor does he attempt to account for the absence of any of them, except the boy, *infra*. In *Clifton* v. *U. S.*, 4 How. 242, it is said that "if the weaker

and less satisfactory evidence is given and relied on in support of a fact, when it is apparent to the court and jury that proof of a more direct and explicit character was within the power of the party, the same caution which rejects the secondary evidence will awaken distrust and suspicion of the weaker and less satisfactory; and that it may well be presumed, if the more perfect exposition had been given, it would have laid open deficiencies and objections which the more obscure and uncertain testimony was intended to conceal." Plaintiff's failure to avail of any corroborative proof, when such, for all that appears, was readily producible, requires us to examine this part of his narrative with more than ordinary caution. In the second place, it will be noted that, so far as above set forth, plaintiff's statement of occurrences at the Cosmopolitan Hotel does not implicate the defendant. What is it that connects him therewith? The additional statement of the plaintiff that he recognized one of the voices which he heard through the fan-light as that of George I. Ryerson. Though he knew defendant well, he was not particularly intimate with him,—had no such acquaintanceship with the tones of his voice as he may be assumed to have had with those of his wife's. Beyond this statement of plaintiff's opinion, however, as to the identity of the voice of an unseen speaker, there is not a *scintilla* of evidence connecting defendant with the transactions at the Cosmopolitan Hotel on the 11th of August. Upon this point, as in regard to the letters, plaintiff is the sole witness. To sustain a verdict in such an action as this solely upon the evidence of the plaintiff, who testifies, not to facts, but to opinions, and to opinions formed at a time when his mind was excited, and his judgment prejudiced by the passions of jealousy, shame, and anger, would be contrary alike to reason and authority.

This verdict is not sustained by the evidence, and should be set aside, especially where, as in this case, it has, perhaps, been induced by matters not in proof. On the third day of the trial, plaintiff, who had endeavored unsuccessfully to subpœna defendant's wife the evening before, called the marshal to the stand, and undertook to prove by him, before the jury, what efforts he had made to find her. This was promptly excluded. Again, at the close of defendant's case, plaintiff moved on affidavits for leave to reopen his case and to examine a new witness, the young man who accompanied him to the Cosmopolitan Hotel, and whom he had not called in chief. This was refused, on the ground that it appeared by the plaintiff's own statements, and by the city directories, that he might easily have procured the witness' attendance by the first day of the trial. So, too, plaintiff was, on the objection of defendant's counsel, refused leave to reopen his case by recalling witnesses, and examining them as to new matter not developed on cross-examination. The results of all these applications were before the jury, and, no doubt, led them to suppose that testimony damaging to the defendant was thus kept out of the case by his objection. Beyond the statement that they "might not draw inferences without actual facts to support them," the jury were not specially cautioned against giving any weight to supposed testimony not before them, the court assuming that they possessed a

higher degree of intelligence than they seem to have displayed; and this extraordinary verdict may find its possible explanation in a prejudice excited by defendant's insistence on a strict application of the rules of proof. By whatever cause it was induced, however, it is clearly not sustained by the evidence, and should be set aside.

Allusion was made upon the argument to the denial of defendant's motion to take the case from the jury upon the whole proof. Counsel refer to a rule familiar to state practice, viz., that where the court would set aside a verdict if against the defendant, it should nonsuit when asked so to do. A nonsuit in a state court and a direction of a verdict for defendant in a federal court, however, do not leave the plaintiff in the same position. In the one case he can pay up his costs, get together more evidence, and sue again; finding in the nonsuit no bar to his recovery. To such new action, however, the judgment entered upon direction of a verdict in a federal court would be a bar. *Insurance Co.* v. *Broughton*, 109 U. S. 121, 3 Sup. Ct. Rep. 99; *Oscanyan* v. *Arms Co.*, 103 U. S. 261. In denying the defendant's motion to direct a verdict in his favor, it was stated that such denial was induced by the consideration that the defendant was not thereby irreparably prejudiced, the motion for a new trial securing him against any wrong from a verdict founded on insufficient proof. At the same time, it appeared to the court that, in view of the suggestion of additional proof made on the motion to reopen the case, it would be unfair to the plaintiff to prevent him from going to a jury either in this case or in any other. He might have been irreparably injured by the direction of a verdict. Let the verdict be set aside.