Booth, Judge,
delivered the opinion of the court:
The plaintiff is the widow and executrix of the last will and testament of Ambrose Monell, deceased. Suit is brought by her to recover an alleged illegal exaction of an estate tax, a tax paid as per the rulings of the Commissioner of Internal Revenue, for the refund of which a proper exemption claim was filed and finally denied. .
Section 401 of the revenue act of 1918 (40 Stat. 1096-1097) enumerates the rates applicable to the determination of estate taxes and closes with the following provision:
“ The taxes imposed by this title or by Title II of the revenue act of 1916 (as amended by the act entitled ‘An act to provide increased revenue to defray the expenses of the increased appropriations for the Army and Navy and the extensions of fortifications, and for other purposes,’ approved March 3, 1917) or by Title IX of the revenue act of 1917 shall not apply to the transfer of the net estate of any decedent who has died or may die while serving in the military or naval forces of the United States in the present war or from injuries received or disease contracted while in such service, and any such tax collected upon such transfer shall be refunded to the executor.”
The exemption was continued in the revenue act of 1921.
Ambrose Monell was commissioned a colonel in the Signal Corps, U. S. Army, on October 8, 1917. Upon this date he was a young man 44 years of age, possessed of perfect physical health, vigorous mentally, and not only free from disease but a person of unusual accomplishments, both physically, and mentally. He was a man of wealth as well as family, and might have easily claimed exemption from *571 military service during the war. He did not do so. He served uninterruptedly in the signal service abroad until honorably discharged on December IB, 1918. During the course of his strenuous service abroad Colonel Monell contracted the dreaded disease known to the profession as encephalitis lethargica, and was on and for many days prior to the receipt of his honorable discharge afflicted with this insidious infection, which not only impairs physical vigor but destroys the mental powers as well. Colonel Monell returned to his home soon after his discharge an invalid, broken both physically and mentally. He suffered continuously. ' Occasionally he manifested periods of improvement, and at one time, due to complete relaxation and freedom from intense physical or mental efforts, disclosed symptoms of substantial convalescence. However, what seemed to be improvement during this time resulted in the end to be only a period of accumulating the furious forces which finally manifested themselves in complete insanity and the patient’s self-destruction on May 2, 1921. As said in the case of Manhattan Life Ins. Co. v. Broughton, 109 U. S. 121, 131: “ Self-destruction by a fellow being bereft of reason can with no more propriety be ascribed to his own hand than to the deadly instrument that may have been used for the„purpose.” Conn. Life Ins. Co. v. Lathrop, 111 U. S. 612; Accident Ins. Co. v. Crandal, 120 U. S. 527; Conn. Life Ins. Co. v. Akens, 150 U. S. 468.
The record does not disclose the commissioner’s reasons for not refunding the tax herein claimed. The statute says it shall be refunded, and it is difficult to approach the case in any other view than the one which has been positively and completely made out, without contradiction in the remotest respect, the sequence of events beginning when Colonel Monell was commissioned, an excellent type of physical and mental vigor, a man especially sought for the particular division of the Army in which he was commissioned, rendering service without stint, and at times when sick and in distressing ill health, receiving his honorable discharge and returning home bereft of a sound body and a sound mind. This record, aside from the testimony of the doctors, would be sufficient to convince a layman that the disease which resulted fatally *572 to the soldier had its inception, in the military service of his country and ultimately resulted in his death.
The case is wholly one of fact, and the indisputable record, complete in every respect, brings the plaintiff within the exempting statute and entitled to judgment beyond a doubt. In a case so obvious, with a record so overwhelming, it is indeed difficult to comprehend just why the plaintiff was put to the necessity of suing for the taxes involved. Congress extended to invalided soldiers of the late war many exemptions for and recognitions of the sacrifice they made. These statutes, along with the one involved in this suit, are remedial ones, designed for the soldier’s benefit, be he rich or poor, and when the facts bring the soldier within the express terms of the law as pointedly as in this case, the difficulty of administering the law totally disappears. We think the commissioner had before him undisputed facts, similar to the record herein, which clearly authorized the refund, and had it been made in accord with the mandate of the law over $175,000 of accumulated interest thereon would have been saved to the Government.
Judgment for the plaintiff for $524,598.90, with interest thereon at the rate of 6 per cent per annum until date of judgment. It is so ordered.
Moss, Judge; Graham, Judge; and Campbell, Chief Justice, concur.