Booth, Judge,
delivered the opinion of the court:
Plaintiff is a Pennsylvania corporation engaged in efficiency engineering and acting as sales agent for the sale of steam-power machinery. This suit is the result of a denial by the Commissioner of Internal Revenue to classify the corporation as a personal-service one whose income is ascribed primarily to the activities of the principal owners or stockholders. The corporation made its income-tax return for the years 1918 and 1919. upon the basis of a personal-service one. The commissioner increased its income and excess-profits tax to the amount of $2,230.69. The plaintiff *359 paid the same under protest, filed a claim for refund which ■was refused, hence this suit for the amount.
The case was referred to a commissioner of the court. The findings of the commissioner are satisfactory to both •sides and admittedly correct. They have been adopted as the findings of the court.
The issue-in the case is largely one of fact. Defendant relies principally upon the fact that E. J. Andrews and Boger W. Andrews did not during the years in question devote themselves regularly to the business of the corporation.
The applicable sections of the taxing act of 1918 read as follows:
■Section 200 (40 Stat. 1058):
“ Sec. 200. That when used in this title — •
* # # # *
“ The term ‘ personal service corporation ’ means a corporation whose income is to be ascribed primarily to the activities of the principal owners or stockholders who are themselves regularly engaged in the active conduct of the affairs of the corporation and in which capital (whether invested or borrowed) is not a material income-producing ' factor.
# * # # # & 35
Section 216 (40 Stat. 1069):
“ Sec. 216. That for the purpose of the normal tax only there shall be allowed the following credits:
“(a) The amount received as dividends from a corporation which is taxable under this title upon its net income, and amounts received as dividends from a personal-service corporation out of earnings or profits upon which income tax has been imposed by act of Congress;
“(b) The amount received as interest upon obligations of the United States and bonds issued by the War Finance Corporation, which is included in gross income under section 213;
❖ # # - # #95
Section 218 (40 Stat. 1070) :
“ Sec. 218. (a) That individuals carrying on business in partnership shall be liable for income tax only in their individual capacity. There shall be included in computing the net income of each partner his distributive share, whether *360 distributed or not, of the net income of the partnership for the taxable year, or, if his net income for such taxable year is computed upon the basis of a period different from that upon the basis of which the net income of the partnership is computed, then his distributive share of the net income of the partnership for any accounting period of the partnership ending within the fiscal or calendar year upon the basis of which the partner’s net income is computed.
“ The partner shall, for the purpose of the normal tax, be allowed as credits, in addition to the credits allowed to him under section 216, his proportionate share of such amounts specified in subdivisions (a) and (b) of section 216 as are received by the partnership.
* # # ❖ *
“(e) Personal-service corporations shall not be subject to taxation under this title, but the individual stockholders thereof shall be taxed in the same manner as the members of partnerships. All the provisions of this title relating to partnerships and the members thereof shall so far as practicable apply to personal-service corporations and the stockholders thereof: ProvidedThat for the purpose of this subdivision amounts distributed by a personal-service corporation during its taxable year shall be accounted for by the distributees; and any portion of the net income remaining undistributed at the close of its taxable year shall be accounted for by the stockholders of such corporation at the close of its taxable year in proportion to their respective shares.
* * * * *))
Section 231 (40 Stat. 1076) :
“ Sec. 231. That the following organizations shall be exempt from taxation under this title:
;j: #
“(14) Personal-service corporations.
;|s * * * * 33
Section 304 (40 Stat. 1090) :
“ Sec. 304. (a) That the corporations enumerated in section 231 shall, to the extent that they are exempt from income tax under Title II, be exempt from taxation under this title.”
The plaintiff corporation was originally organized with a capital of $600. Thereafter $3,000 or $4,000 of. the earnings of the company were invested and utilized to pay the office force and care for earned but deferred payments of com *361 missions. By 1919 it had accumulated a surplus of about $21,000, most of which had been invested in Liberty bonds. It occupied two rooms in a building in Pittsburgh and employed a stenographer, bookkeeper, and an engineer, from which it is more than evident that “ capital (whether, invested or borrowed) is not a material income-producing factor.”
Grant D. Bradshaw owned 55.2 per cent of the stock, E. J. Andrews and Roger W. Andrews each owned 22.4 per cent of the stock, and these three men owned together all of the stock of the corporation. The activities of the corporation were restricted to but two sources of income, both of which involved strictly personal services. Grant D. Bradshaw, the president of the company, had charge of the sales development and the engineering activities of the company in the Pittsburgh district. He was in fact a graduate and an efficiency engineer. The company was acting as sales agent for six or eight manufacturers of steam equipment machinery, and developed a demand for such by visiting and inspecting various steam-power plants, pointing out to the operators thereof troublesome installations and operations of existing equipment and suggesting changes calculated to produce a maximum of efficiency at a minimum of cost.
E. J. Andrews was a lawyer by profession, having an office in Chicago, Illinois. The Chicago office of the plaintiff was in the same rooms with Andrews, and in addition to representing the plaintiff as to all legal and patent matters, looked after its contracts as well as supervised all that was done by an employee of the company in Chicago.
Roger W. Andrews, the remaining member of the corporation, was like Bradshaw, an efficiency engineer and salesman. He had been connected with the Northern Equipment Company of Erie, Pa., in a similar capacity prior to the organization of the plaintiff company, and after its organization the corporation acted as sales agent for said company. R. W. Andrews was active all the time in a personal way in behalf of the corporation, except from some date in 1918 until March 25, 1919, when he was serving as an officer in the Air Service in France.
*362 The corporation carried no stock in trade and its income was derived from commissions on sales of steam-plant equipment. As a matter of fact, the Government’s single defense depends wholly upon a contention that E. J. Andrews did not devote his entire time to the business of the corporation, and Roger W. Andrews was precluded from so doing during the period of time involved by his continued absence abroad as an officer in the Air Service.
We think the contention is without merit. Eliminating for the purposes of the present discussion the status of E. J. Andrews, we think the record establishes as a matter of fact and law that the income of the plaintiff is to be ascribed primarily to the principal stockholders regularly and actively engaged in conducting the affairs of the corporation. Bradshaw owned 55.2 per cent of the stock. His status under the taxing law is not challenged. R. W. Andrews owned 22.4 per cent of the stock. Their combined holdings totaled 77.6 per cent, and both were active in a personal way, except during the period when R. W- Andrews was in France in the Air Service, and at the close of which, following his honorable discharge from the Army, he resumed his activities in the corporation. Was it the intention of Congress in providing for the tax exemption involved to withhold the exemption in the event of one of its stockholders being precluded from personal activities by service in the Army abroad during the war? The defendant admonishes the court that the issue involved is strictly a legal one, and the court is not concerned with the equities of the situation. The statute, we are told, makes express provisions and the courts have held that a corporation “ may comply therewith and easily keep within the limits thereof if it so choose, or it may not if it otherwise prefers.” Matteson Co. v. Willcuts, 12 Fed. (2d) 447, 448. We find no occasion to differ from this contention. May, however, the Government draft into the military service of the Nation in time of war, as it has a right to do, a constituent member of a corporation, and thereby for the time being convert by this act a personal-service corporation into one of another character? We think not. The record is silent as to whether R. W. Andrews was drafted or volunteered. In *363 any event, the question is immaterial; the status of the soldier is exactly the same. The members of. this corporation did comply with the provisions of the exemption as stated ,in the taxing act. Beyond doubt the plaintiff was intended as a personal-service corporation and was in law and in fact one of that character, is at the present time entitled to that classification, and continued as such, except for the period of time when one of its principal stockholder’s activities were suspended by the act of the Government itself because of war emergencies. In other words, three men organize prior to the war a personal-service corporation; its activities continue as such until the Government becomes involved in war and one of the members goes into the Army, either voluntarily or in response to the draft, and by his absence places the entire activities of the corporation upon those who remain. The fact of the absence of the one man in the Army invokes against the enterprise in which he is an important figure, for the time he is away, the burdens of a taxing statute, burdens he admittedly would have escaped except for a war crisis. The necessities- of the Government in time of war, especially as to its fighting-forces, are, of course, superior to the personal interest or business activities of those capable of military duty. Congress recognized this fact and enacted the act of March 8, 1918, 40 Stat. 440, “An act to extend protection to the civil rights of members of the Military and Naval Establishments of the United States engaged in the present war.” This statute, most comprehensive in scope and detail, would have effectually precluded the enforcement of any liability as against this soldier personally, in any court, during his war service. If he had lost his life or contracted a disease in the service frdm which he thereafter died, no estate tax could have been assessed against his estate. Section 401 of the revenue act of 1918, 40 Stat. 1096-1097; Monell v. United States, No. H-282, decided by this court February 20, 1928 (64 C. Cls. 566); the familiar war risk insurance act, enacted to provide insurance by the Government for men in the Army. These statutes, and perhaps others which we do not at present have at hand, clearly reflect a governmental recognition of the pro tcmto suspension of the civil liability *364 of an active soldier in time of war so that he may, unfettered by the usual responsibilities of civil activities, give his entire time to the cause of his Nation in actual warfare without fear of the loss of any civil rights and status during this period.
It is true the above are express statutory provisions providing exemptions and protecting rights, and that no similar provision is found in the taxing act under which the commissioner collected the tax now sued for, but suspended civil rights due to military service in time of war, and by the term “ suspended civil rights ” we mean as well the maintenance throughout the war service of the identical civil status occupied by the soldier on the date he entered the Army or Navy, enter into every congressional enactment which affects him personally because of such military service, unless some provision to the contrary obtains. We think •that as a matter of law the officer involved was to all intents and purposes to be considered as an active member of the corporation during his military service, and entitled to the benefits of all exemptions to which he would have been entitled as a civilian during the same period.
The plaintiff is entitled to judgment for $2,230.69 with 6 per cent interest thereon from date of payment to date of judgment. It is so ordered.
Moss, Judge; Graham, Judge; and Campbell. Ghief Justice, concur.
GreeN, Judge, took no part in the decision of this case.