Merrimack,
Dec., 1898.

### ORDWAY v. BOSTON & MAINE RAILROAD.

An involuntary nonsuit, ordered by the court on the ground of the insufficiency of the plaintiff's evidence to authorize the verdict of a jury in his favor, is a bar to a subsequent suit upon the same cause of action between the same parties.

CASE, for negligence. The defendants pleaded (1) the general issue and (2) a former judgment rendered in a suit between the parties for the same cause of action. Replication to the second plea, that the former judgment was not rendered upon a trial on the merits involved in that suit, but was a judgment upon a nonsuit. Facts found at the trial term.

The present suit is for the same cause of action as the suit between the same parties tried at the October term, 1896. At that trial the plaintiff presented his case to the jury and submitted it. Thereupon, upon motion of the defendants, the court ordered a

nonsuit, to which the plaintiff excepted. At the June law term, 1897, the plaintiff's exception was overruled. At the October term, 1897, judgment was entered for the defendants. The plaintiff's counsel did not move for a rehearing of the question reserved in that case, because they understood a judgment in that action upon the order of nonsuit was not a bar to the prosecution of another action for the same cause. They claim to have discovered since the former trial additional evidence tending to show knowledge by the defendants of the dangerous character of the freight car draw-bar by which the injury was caused, and of the defendants' negligence in allowing the draw-bar to continue in that condition; also, evidence tending to show that the plaintiff did not know, and by the exercise of reasonable care could not have known, of the defect in the draw-bar or of the danger attendant upon its use.

The questions arising upon the foregoing pleadings and findings were reserved.

*Sargent, Hollis & Niles*, for the plaintiff.

*Frank S. Streeter* and *John M. Mitchell*, for the defendants.

BLODGETT, C. J. The question in this case is whether an involuntary nonsuit, ordered by the court for the insufficiency of the plaintiff's evidence to authorize the jury to find a verdict in his favor, is a bar to a subsequent suit upon the same cause of action between the same parties.

It is familiar law that a former judgment by a court of competent jurisdiction over the parties and subject-matter is, while outstanding, an absolute bar to a subsequent action for the same cause between the same parties or their privies, if such judgment is final and rendered upon the merits. In other words, the cause of action becomes *res judicata*, the doctrine of which amounts simply to this, that an issue once determined by a court of competent jurisdiction may be interposed as an effectual bar to any further litigation of the same matter by parties and privies.

In the present case it is not questioned that all the requisites necessary to support the defendants' plea of *res judicata* exist, if the former judgment was rendered upon the merits. As a technical legal term, " merits " has been defined in law dictionaries as " matter of substance in law, as distinguished from matter of form " (Black; Burrill), and as " the real or substantial grounds of action or defence, in contradistinction to some technical or collateral matter raised in the course of the suit." ( Anderson; Abbott.) " A judgment is ' upon the merits ' when it amounts to a declaration of the law as to the respective rights and duties of the parties, based upon the ultimate fact or state of facts dis-

closed by the pleadings and evidence, and upon which the right of recovery depends, irrespective of formal, technical, or dilatory objections or contentions." 2 Black Judg., s. 694.

In view of the issue between the parties in the former suit, it is impossible to hold that the judgment therein was not upon the merits, as a matter of fact. The nonsuit was ordered on the ground that the plaintiff's own evidence so conclusively showed that he knew of the danger which caused his injury that only one conclusion could honestly be drawn from the evidence by reasonable men, and that with such knowledge he assumed the risk of that danger, as matter of law. Taking this to be so, it is self-evident that there is no tenable ground for claiming that " the real or substantial grounds of action or defence " were not passed upon, or that " the very cause of action " was not decided " irrespective of formal, technical, or dilatory objections or contentions " not involving the essential merits of the controversy. On the contrary, it is demonstrated to a mathematical certainty that upon the most favorable construction that could be put upon the uncontroverted facts by reasonable men, it was ruled that the plaintiff had no cause of action against the defendants, and that the subsequent judgment affirming the ruling was necessarily a judicial determination that upon those facts no cause of action had been established. Indeed, the truth of these propositions is so apparent and certain that it may safely be affirmed that if that judgment was not in point of fact a judgment upon the merits, no judgment of this or any other court ever·fulfilled that requirement.

But it is contended that it is a settled and inflexible rule of law that a judgment of nonsuit is not a judgment upon the merits, and therefore it is no bar to another suit upon the same cause of action. It must be conceded that such is the doctrine of the authorities. 1 Freem. Judg., s. 261 ; 2 Black. Judg., s. 699 ; 1 Van Fleet Form. Adj. 192, 193 ; 16 Am. & Eng. Enc. Law 747 ; Homer v. Brown, 16 How. 354 ; Manhattan Life Ins. Co. v. Broughton, 109 U. S. 121, 124 ; Pendergrass v. York Mfg. Co., 76 Me. 509 ; Gummer v. Omro, 50 Wis. 247, 252 ; Nat'l Water Works Co. v. School District, 23 Mo. App. 227, 235 ; Wood v. Ramond, 42 Cal. 643.

How the rule originated it may be impossible definitely to determine ; but it seems likely to have had its origin in the failure to distinguish between voluntary and involuntary nonsuits, as to which there is nothing in common but their general name.

At common law an involuntary nonsuit was unknown, and the power to order it does not even now exist in the mother country. Watkins v. Towers, 2 T. R. 275, 281 ; Prof. Jur., s. 107 ; 2 Thomp. Trials, s. 2227 ; 2 Broom & H. Com. (Am. ed.) 266 ; Grah. Pr. 270. In the language of counsel, " The English nonsuit was

purely voluntary. It was merely ' a judgment against the plaintiffs for not appearing on a day when they are demandable,' *Paxton* v. *Popham*, 10 East 366, 368 ; Co. Lit. 138 b ; 3 Bl. Com. 376. At the time of the American Revolution, however, a practice had grown up in the English courts, which, in its practical operation, was very similar to our peremptory order. When the plaintiff had introduced his evidence, if the court was of opinion that it was insufficient to sustain his case it would inform the plaintiff of that opinion and advise him to become nonsuit. The court could not compel a nonsuit if the plaintiff insisted on his right to appear when called, and could only enforce its opinion through the medium of its charge to the jury (see, *e. g.*, *Macbeath* v. *Haldimand*, 1 T. R. 172, 176) ; but as the influence of the court upon the jury was very great, and as the advice was practically an intimation that even if a verdict should be returned in the plaintiff's favor it would probably be set aside and a new trial granted, the plaintiff usually consented to take a nonsuit, in order to save additional costs and preserve his right of action in case he should obtain new evidence later." See Prof. Jur., *s.* 107, and 2 Thomp. Trials, *s.* 2227, before cited.

The English practice has been followed to some extent in this country. The question arose at an early period in the federal courts, and it was held that " a nonsuit may not be ordered by the court in any case without the consent and acquiescence of the plaintiff" (*De Wolfe* v. *Rabaud*, 1 Pet. 476 ; *Elmore* v. *Grymes*, 1 Pet. 469) ; and in *Crane* v. *Morris' Lessee*, 6 Pet. 598, it was said that " the question is not now open to controversy." And such is the doctrine of subsequent decisions. *Silsby* v. *Foote*, 14 How. 218 ; *Castle* v. *Bullard*, 23 How. 172. The same practice was also adopted, and is still maintained, in some of the state courts. *French* v. *Smith*, 4 Vt. 363 ; *Smith* v. *Crane*, 12 Vt. 487 ; *Kettlewell* v. *Peters*, 23 Md. 312 ; *Clark* v. *Railroad*, 36 Mo. 202 ; *Williams* v. *Port*, 9 Ind. 551 ; *Winston* v. *Miller*, 12 Sm. & M. 550 ; *Hill* v. *Rucker*, 14 Ark. 706 ; *Morgan* v. *Bliss*, 2 Mass. 111 ; *Mitchell* v. *Insurance Co.*, 6 Pick. 117. " In the majority of the United States, however, the granting a nonsuit on motion of the defendant against the assent of the plaintiff is the recognized practice, either grown out of statutory reforms, or out of judicial decisions founded on reason and the advisability of some shorter method of objecting to the plaintiff's case made on the trial, than by the cumbersome demurrer to evidence " (Note to *French* v. *Smith*, 24 Am. Dec. 620) ; and this, it is believed, has always been the practice in New Hampshire.

While in form and in theory the nonsuit taken under the advice of the court was a voluntary discontinuance, and hence not a bar to a new action, in its practical operation it was manifestly compulsory, and so the English practice came to be spoken of

as " directing a nonsuit" (*Sadler* v. *Robins*, 1 Camp. 253; 1
Stark. Ev. 440), and " nonsuiting the plaintiff" (1 Saund. 195 *d*
note [*f*]; 1 Stark. Ev. 439; *French* v. *Smith, supra*), the same
as our peremptory order is now spoken of.

In the light of these facts, " when," as is said by counsel,
" we find the present peremptory nonsuit in use in several of the
American states at an early period, without legislative action
and without apparent consciousness that a legal novelty was
being introduced, it seems clear that the new proceeding came
into use through misapprehension of the English practice," and
that the effect of the peremptory order as a bar when made upon
the merits was confounded with that of the familiar nonsuit
taken under the advice of the court, through " the erroneous sup-
position that the question was set at rest by authorities which
were in fact irrelevant."

The question raised by the case has never been judicially de-
termined in this state, although the general principle that a non-
suit is not a bar to a subsequent action has been declared in a
number of cases. *Holton* v. *Gleason*, 26 N. H. 501, 505; *Demerit*
v. *Lyford*, 27 N. H. 541, 548; *Taylor* v. *Barron*, 30 N. H. 78, 104;
*Eaton* v. *George*, 40 N. H. 258, 266. In some of these cases the
nonsuit was evidently voluntary, and for aught that appears, all
of them were of that class; but however this may have been, the
question now presented was apparently not raised or considered
in any of them, and it may therefore properly be regarded as an
open one.

It is matter of common knowledge that the motion for a per-
emptory nonsuit has always been in extensive use in this state
when, in the defendant's opinion, the evidence for the plaintiff
has failed to sustain his case, and that the granting of such mo-
tions has been of frequent occurrence in all classes of cases, but
more especially in actions for personal injuries. This of itself
affords weighty evidence of the general understanding of the
profession as to the effect of a nonsuit for failure of evidence
(*Hoitt* v. *Hoitt*, 63 N. H. 475, 496), and when it is coupled with
the significant fact that, so far as we have been able to ascertain,
no second action has ever been brought in this state after judg-
ment on such a nonsuit, aside from the present one, satisfactory
proof would seem to be afforded that hitherto it has been uni-
formly regarded as an effectual bar to a subsequent action. If
such were not the fact, it is inconceivable that the motion would
have been so frequently resorted to rather than the motion to
direct a verdict, inasmuch as the same evidence that will sustain
the one will sustain the other, and neither can be applied only
where the plaintiff has failed to make a case which the law says
is proper to be submitted to a jury. That this plaintiff did so
fail is established by the judgment affirming the nonsuit, and

affords conclusive proof that a legal verdict could not have been returned in his favor.

It follows from these considerations that if the defendants' motion had been to direct a verdict in their favor it would have been granted; and if it would, no one can doubt that the subsequent judgment upon it would have barred the present action.

. In reason and in justice, why should not the judgment on the nonsuit be given the same effect? Both methods of procedure are identical in substance; they decide the same question; they depend upon the same evidence; the ground of the court's action is the same in each; and in both it is the court, and not the jury, that is the moving and controlling power. The only appreciable difference is that in the one the court, upon a given state of facts which in his opinion does not entitle the plaintiff to a recovery as matter of law, directs the clerk to enter a nonsuit; while in the other, upon the same facts and entertaining the same opinion, he rightly asserts positive control over the consciences of the jury by directing and requiring them to find a verdict for the defendant. To call or regard a verdict so rendered a determination of the facts by a jury in any just sense, is a palpable misnomer and a legal absurdity.

Nor in giving the same effect to both methods of procedure when the facts would not authorize the jury to find a verdict for the plaintiff, or if the court would set it aside if so found as contrary to evidence, is there to be apprehended any danger of encroachment upon the plaintiff's rights, or abridgment of the prerogatives of the jury. Whether a verdict or nonsuit be ordered, no right of the plaintiff is taken from him, if his rights be regarded in their just extent. He cannot rightfully claim a verdict of the jury if he fails to produce evidence which will legally sustain it, and it is only when he does so fail that he is precluded from submitting his case to their consciences; nor is there any violation of the salutary rule (which is nowhere given a more extensive application than in this jurisdiction), that to questions of law the judges are to respond, and to questions of fact, the jury, because it is purely a question of law whether, upon a given state of facts, the plaintiff is entitled to recover.

In our opinion, the difference between the two methods is formal and technical only; and in view of the fact that in this jurisdiction, during the last quarter of a century, at least, formalities and technicalities have been regarded with constantly increasing disfavor when opposed to substance and justice, we have no hesitation in holding that the plaintiff's action is barred by the judgment in the former suit. When a party is entitled to a judgment in his favor, he may have it without the idle formality of a verdict which the jury would be required by law to

give. *McKean* v. *Cutler*, 48 N. H. 370, 374, 375; *Owen* v. *Weston*, 63 N. H. 599, 603, 604. " There is no inflexible form of judgment. In every case, a judgment, whether authorized by common or statute law, is merely the conclusion that naturally and regularly follows from the premises of law and fact. 3 Bl. Com. 396. . . . That result, stated on the record in any intelligible form, will be a good judgment. There is not any word or form of expression that is indispensable in a judgment. Forms are convenient, but they are not to be mistaken for law. Sometimes they are evidence tending to show, with more or less force, what the law is, but they are not law. The common law is not a system of rigid form and senseless routine devised for the delay or defeat of justice. Occasionally it has been perverted or misunderstood by some who have theoretically or practically dissented from the opinion of Lord *Coke* that it is the perfection of reason; but the tribunal that most fully sustains and justifies the opinion of Lord *Coke* by adhering to the substance and spirit rather than the form and letter, proceeds upon the soundest principles and the highest authorities." *McKean* v. *Cutler, supra.*

It is perhaps unnecessary to go farther, but it may not inappropriately be added that the practice of this court in recent years has recognized no difference between the effect of a nonsuit upon the merits and a verdict so directed, and that in both cases alike the same order has been made at the law term. For example: In *State* v. *Railway*, 65 N. H. 663, 665, 666, the defendants moved for a verdict on the ground that there was no evidence of care on the part of the deceased, and excepted to the denial of their motion. The exception was sustained by the full bench and the order was: " Judgment for the defendants." In *Collins* v. *Laconia Car Co.*, 68 N. H. 196, the defendants moved for a nonsuit, which was denied subject to exception, and a verdict returned for the plaintiff. The exception was sustained, and "judgment for the defendants" ordered. In *Deschenes* v. *Railroad, ante, p.* 285, the motion at the trial term was that a verdict be directed for the defendants. The motion was denied, and exception taken. The order at the law term was: " Verdict set aside: judgment for the defendants." In *Burnham* v. *Railroad*, 68 N. H. 567, there was a motion for a nonsuit and also to direct a verdict. The law term order was the same as in the preceding case. Other examples might be cited, but it is not deemed necessary. It is true, however, that in the former suit between the present parties (*Ordway* v. *Railroad, post*) the entry at the law term was, " Exception overruled"; but this entry was clearly made through inadvertence, and should be corrected by adding to it, " Judgment for the defendants," so as to conform to the established practice. The power of courts to modify their judgments and amend their records is unquestionable. *Eastman* v. *Concord*, 64 N. H. 263, 264.

There is still another consideration that should be adverted to upon the question of the plaintiff's right to another trial, which is that it would be against the public policy of the state as evidenced and declared by the abolition of the right of review by the legislative act of 1878. Laws 1878, *c.* 64. The effect of that enactment was to restrict parties to one full and impartial trial upon the merits, irrespective of formalities and technicalities. The plaintiff has had such a trial.

Nor, as he contends, does the conclusion at which we have arrived make the plaintiff's case one of unusual hardship because he abandoned the right to move for a *rehearing* upon the supposition that it was his right to bring a new action. If the motion had been made, it is hardly probable that it would have been granted, in view of the fact that, after full discussion by counsel, the case was regarded as so plain that the opinion of the court was expressed in three lines (*Ordway* v. *Railroad, post*); and, moreover, if injustice has been done, an adequate remedy is afforded by the statutory provision that "A new trial may be granted in any case, when through accident, mistake, or misfortune justice has not been done and a further hearing would be equitable." P. S., *c.* 230, *s.* 1. This provision clearly affords the plaintiff all the remedy he ought to have, if he chooses to pursue it.

*Judgment for the defendants.*

PARSONS, J., did not sit : the others concurred.