7376

MORROW v. ATLANTA AND CHARLOTTE AIR LINE RY. CO.

Bar—Railroads.—Two judgments in actions in the courts of North Carolina between the same parties on the same cause of action, a delict in that State, against plaintiff, are a bar to an action in this State upon the same delict, upon substantially the same evidence and against the same defendant or its privy.

Before Hydrick, J., Spartanburg, August, 1908. Affirmed.

Action by Charles R. Morrow against Atlanta and Charlotte Air Line Railway Company. From order setting aside verdict and dismissing complaint, plaintiff appeals.

*Messrs. A. G. Mangum* and *Wilson & Osborne,* for appellant, cite: *Common law is presumed to govern in both States:* 66 S. C., 91; 122 N. C., 270; 130 N. C., 479. *Under this law plaintiff should recover:* 31 S. E., 212; 21 Am. R., 371; 59 F., 431; 66 S. W., 114; 47 S. W., 41; 25 S. E., 387; 33 P., 213; 21 N. E., 31. *In North Carolina, negligence is for jury:* 130 N. C., 488; 66 N. C., 494; 132 N. C., 340. *Defendant must show contributory negligence:* 122 N. C., 889; 132 N. C., 852. *And his proof must respond to his allegation:* 143 N. C., 312; 144 N. C., 1; 117 N. C., 616; 136. N. C., 3; 144 N. C., 1; 137 N. C., 349; 130 N. C., 437; 141 N. C., 84; 126 N. C., 811; 142 N. C., 120. *Nonsuit under "Hinsdale Act" of North Carolina:* 132 N. C., 250; 147 N. C., 255; 177 N. C., 616. *Statute of limitations of forum applies:* 66 N. C., 91; 127 N. C., 190; 52 L. R. A., 201; 18 S. C., 543. *This action would not be barred in North Carolina:* 125 N. C., 201; 128 N. C., 243; 147 N. C., 335; 89 N. C., 273; 19A, 112; 19P, 764; 47 S. E., 366. *Judgment on nonsuit is not bar to another action:* 24 S. C., 479; 131 N. C., 1; 135 N. C., 622; 147 N. C., 335; 132 N. C., 250, 697; 6 S. E., 695; 9 Pac., 938; 93 Mass., 483; 7 Ency., 789; 52 S. E., 328; 44 S. E., 11; 9 Ency. P. & P., 627; 150 U. S., 349; 125 U. S., 555. *Nonsuit cannot be sustained on additional grounds:* 58 S. C., 990; 53 S. C., 132; 54 S. C., 353; 55 S. C., 450; 64 S. C., 580; 23 S. C., 105; 59 S. C., 508; 65 S. C., 206; 15 S. E., 960.

*Messrs. Sanders & DePass,* contra, cite: *Appellant is bound by judgment of Courts of North Carolina:* 70 S. C., 258; 67 S. C., 53; 70 S. C., 254; 3 Hill, 212; 95 Am. St. R.. 659; 74 Am. St., R., 871; 115 U. S., 630; 160 Ill., 236; 65 S. C., 418; 7 Cranch., 484; 97 U. S., 336; 53 S. C., 195; 52 S. C., 175; 109 Am. St. R., 123; 86 Pac., 597; 46 S. E., 12; 43 S. C., 221. *Appellant was guilty of contributory negligence:* 46 S. E., 14; 20 S. E., 473; 41 S. E., 794; 36 S. E., 117; 24 S. E., 426; 44 S. E., 25, 648; 80 S. C., 5; 41 S. E.,

794; 53 A. & E., 847. *Appellant was guilty of negligence:*
Code, N. C., 1905, sec. 2628; 43 S. E., 847; 55 S. E., 713;
67 S. C., 61.    *The injury occurred in North Carolina, by a
North Carolina corporation:* 174 U. S., 552; 124 Fed., 358;
118 Fed., 63; 65 L. R. A., 921; 116 U. S., 335.    *And the
South Carolina corporation is not liable:* 8 Fed., 794; 95
Ala., 237; 69 Fed., 753; 88 Ill., 615; 107 U. S., 520; 174
U. S., 562; 136 U. S., 380; 53 Mich., 91.


November 23, 1909.    The opinion of the Court was deliv-
ered by

JUDGE JOHN S. WILSON, *Acting Associate Justice, in
place of Mr. Justice Hydrick, disqualified.*

The plaintiff in this action, by his complaint, alleges:

First. "That he is a citizen and resident of the State of
South Carolina, aforesaid.

Second. "That the defendant, Atlanta and Charlotte Air
Line Railway Company, is now, and was at the times herein-
after mentioned and set forth, a corporation duly created
and organized under the laws of the State of South Carolina,
and at said times, and now, owned a railroad from Charlotte,
North Carolina, running through the County of Spartan-
burg to Atlanta, Georgia, together with the tracks, cars,
locomotives, passenger stations or depot, station yards and
all appurtenances thereto belonging, and was a common car-
rier of passengers thereupon for hire between the aforesaid
cities of Charlotte, North Carolina, through the aforesaid
county and city of Spartanburg, South Carolina, and At-
lanta, Georgia, but prior to the night of the 27th day of
August, 1902, the defendant had leased, under the authority
of law, its said line of railway to Southern Railway Com-
pany, another railway corporation, and the said Southern
Railway Company, was on the night of said 27th of August,
1902, as now, operating the said line of railway from the
said city of Charlotte, through Spartanburg, South Carolina,

to the said city of Atlanta, Georgia, as a common carrier of passengers and freight thereupon for hire.

Third. "That on the night of the 27th day of August, A. D. 1902, the plaintiff accompanied his sister, one Mattie York, and the latter's six infant children, to the passenger station or depot of the above named lessee of defendant, Southern Railway Company, in the city or town of Gastonia, North Carolina, said passenger depot or station being the place provided by the defendant and its aforesaid lessee, for persons or passengers to get on and off the trains of the defendant's said lessee, and after reaching said passenger depot or station, plaintiff's sister purchased from the duly authorized ticket agent of the lessee of defendant, Southern Railway Company, tickets for herself and for her children, who were not under the tender age, for which transportation charges are not made, over said leased railroad from Gastonia, North Carolina, through Spartanburg, South Carolina, to a point beyond Atlanta, Georgia, in Indian Territory, paying for said tickets the customary and usual charge made by said Southern Railway Company, as lessee of the defendant, allowed by law to be made for such transportation.

Fourth. "That the children of the sister of plaintiff, above mentioned, six in number, were aged from four years to fifteen years, respectively, and his sister, in addition to the care and attention demanded of her by these children of tender years, was further encumbered with two heavy grips and by two large bundles, containing provisions and other necessaries for the long trip to Indian Territory, thereby rendering it absolutely necessary that she, with her children, grips and bundles, be assisted aboard train No. 35 of the lessee of the defendant, being the train she proposed to get aboard, by plaintiff, should the conductor and crew of train, either fail to assist her, or not be in position to render such assistance.

Fifth. "That said train No. 35, going South, that is, towards Spartanburg and Atlanta, was by schedule then in

operation, due to reach Gastonia, North Carolina, at about 11 o'clock p. m., but on the night of the 27th of August, 1902, was a little late, and did not reach the passenger station or depot in Gastonia until some minutes after the schedule time. As the train drew up and stopped at said passenger station, a considerable number of passengers disembarked from said train, and quite a number besides plaintiff's sister and her children, got aboard said train, but neither the conductor nor any other member of the crew of said train, either assisted or offered to assist plaintiff's sister or her children aboard, but on the contrary, a member of the said train crew, in uniform and with a lantern, was standing within a few feet of the coach or car, where plaintiff's sister and her six children, with the assistance of plaintiff and a brother-in-law, were placed aboard said train, but said officer, agent, servant or employee of the lessee of defendant in no manner assisted, or offered to assist plaintiff's sister with her children, grips and bundles aboard the train and to seats within, but on the contrary, entirely refrained from so doing.

Sixth. "That by reason of the failure of the officers, agents, or servants of the defendant and of its lessee, Southern Railway Company, in charge of said passenger train No. 35, to aid or to offer to assist in placing the sister of plaintiff, with her children and luggage safely aboard said train, plaintiff was compelled to do so, and with the assistance of a brother-in-law, succeeded in getting his sister, her children, grips and bundles aboard the first class passenger coach of said train, but before the said passengers could be seated the defendant and its lessee, Southern Railway Company, their officers, agents and servants in charge of said passenger train, moved and started, and caused to move and start, the said train, with full knowledge and notice that plaintiff was in said car, and that sufficient and reasonable time had not been allowed for him to get off same, and that plaintiff proposed getting off.

Seventh. "That immediately on discovering that the aforesaid train had started, and was moving, plaintiff went to the platform and steps of said first class car, the customary place used for passengers and persons attending them to get aboard and alight from said train (being the place provided by defendant and its lessee for such purposes), and observing that the train was moving very slowly, and had not proceeded as far as 150 feet from the point of starting, and was still within the passenger station yard, plaintiff descended from the platform to the bottom step of said car, and having firmly grasped with his hands the railing of the steps and platform, was carefully scanning the ground to ascertain whether he could, with safety, alight, but before plaintiff could determine, the officers, agents and servants of defendant and of its lessee in charge of said train, with knowledge that he was still aboard and proposed getting off, negligently, greatly accelerated the speed of said train, thereby causing the same to jerk suddenly, which sudden jerk brought him in contact with a mail sack or sacks which the officers, agents and servants of the defendant and its aforesaid lessee, Southern Railway Company, had negligently suffered to remain on said passenger station yard, and by reason of these joint and concurrent acts of negligence, plaintiff was jerked and hurled under the aforesaid moving train of cars, the wheels of which passed over his legs, crushing and breaking them, thereby rendering it necessary to amputate both of his legs—the left leg between the knee joint and the hip joint, and the right leg between the ankle joint and the knee joint,—moreover deeply cutting and disfiguring plaintiff's face and head and inflicting terrible pain and anguish of body and mind, laming and disfiguring the plaintiff for life, and rendering him unable to pursue his usual calling or any calling, disabling and permanently crippling him, so that he will never walk and totally incapacitating him from making his support, to the great damage of plaintiff, in the sum of fifty thousand dollars.

Eighth. "That the plaintiff, Charles Morrow, received the terrible and permanent injuries of which he complains, above mentioned and described, by and through the negligence and carelessness of defendant, its officers, agents and servants and through the negligence and carelessness of Southern Railway Company, the lessee of defendant, its officers, agents and servants in charge of the aforesaid passenger train, and also because of reckless, wilful and wanton misconduct of the defendants, its officers, agents and servants and of Southern Railway Company, its lessee, its officers, agents, servants and employees in charge of said passenger train, No. 35, going south, in the following respects, namely:

1. "In not rendering any assistance whatsoever towards placing Mrs. York, the sister of the plaintiff, and her six children, safely aboard passenger train No. 35, south, to whom as passengers, after selling them tickets for their transportation, the highest degree of care was due by the defendant and its lessee, Southern Railway Company, consistent with its duty as a common carrier, thereby rendering it necessary for plaintiff to give the assistance to his sister and children that should have been rendered by the defendant and its lessee, their officers, agents and servants in charge of said train.

2. "In not stopping said passenger train, No. 35, the customary and reasonable time at Gastonia, North Carolina, and in not giving the customary and usual signals and warnings given by said officers, agents and servants in charge of said train, but on the contrary, in starting the train without giving the plaintiff any notice or warning, or a sufficient or reasonable time to alight from the train, after first discharging the services to his sister and her children that had been forced on him, through the default and wilful and wanton neglect of said officers, agents and servants.

3. "In starting said passenger train of cars in motion, with full knowledge that plaintiff was still aboard same, and

wished to get off, and that sufficient time had not been allowed him to alight therefrom.

4. "In starting said train of cars in motion, without giving to passengers and others, attending passengers, the usual time, or sufficient time to get aboard and get off said train.

5. "In that said officers, agents and servants, both before plaintiff boarded said passenger train, with his sister, Mrs. York, and her said children, and after he had gotten aboard of the same, knew and had full knowledge and notice, or had reasonable grounds to know and have notice, that he was aboard said train, discharging duties and services that they were in duty bound to perform, namely, to assist passengers, his sister and six children, with grips and bundles aboard, and to seat them in the car before starting the train in motion, and that he proposed getting off the train then and there.

6. "In not observing the custom long sanctioned and allowed of permitting persons, not passengers, to assist passengers aboard this train, No. 35, and to give reasonable time, signals and warnings to alight from said train.

7. "In throwing or placing the mail sack or sacks in which plaintiff's feet became entangled on the yard of passenger station at Gastonia, North Carolina, when he was thrown from the steps of said train, and in allowing same to remain on said station yard an unnecessarily long time, with knowledge and notice, or with reasonable grounds for knowledge and notice, that passengers and persons attending passengers, in alighting from said train, would be liable to step upon and become entangled in said sack or sacks, to their personal hurt and injury.

8. "In causing the train to suddenly jerk by accelerating the speed thereof, at a time when said officers, agents and servants in charge of said train knew, should have known, or at the very least, had reasonable ground to know that plaintiff was aboard, discharging the duties of the conductor

and porter, and would alight therefrom, thereby throwing him from the train as aforesaid, and thereby causing the injuries hereinbefore fully described.

9. "That by reason of the injuries above mentioned and described, the plaintiff not only suffered excruciating torture, pain and mental anguish above described, but for a long time became dangerously ill, and was compelled to call in the professional skill and services of physicans and surgeons, and was subject to great expense in endeavoring to cure himself and was compelled, for the preservation of his life, to have both his legs amputated in the manner hereinbefore described and will be compelled to incur further expense in seeking relief from physicians and surgeons, the remainder of his life.

10. "That plaintiff is now 23 years of age and a resident and citizen of York county, in the State of South Carolina, but at the time he sustained the injuries hereinbefore complained of, he was 19 years of age, possessed a strong and vigorous constitution and of robust health, and was earning wages amounting to about three hundred dollars per annum, and enjoyed life expectancy of 42.9 years under the mortuary table, now in force in this State.

"Wherefore, plaintiff demands judgment of the defendant in the sum of fifty thousand dollars ($50,000) besides the costs of this action."

The answer of the defendant is:

1. "That it admits the allegations contained in paragraph one of the complaint.

2. "For a first defense, defendant admits that it is now, and was at the times hereinafter mentioned, a corporation duly chartered and organized under the laws of the State of South Carolina, but it denies that at said times, and now, it owns a railroad from Charlotte, North Carolina, running through the County of Spartanburg, to Atlanta, Georgia, together with the tracks, cars, locomotives, passenger stations or depots, station yards and all appurtenances there-

unto belonging, or that it was a common carrier of passengers thereupon for hire between the aforesaid cities of Charlotte, North Carolina, through the aforesaid county and city of Spartanburg, South Carolina. On the contrary, this defendant alleges that it is a corporation duly chartered, organized and doing business under the laws of this State, and that it owns a railroad running from the North Carolina line to the Georgia line, together with tracks, cars, locomotives, passenger stations or depots and station yards and all appurtenances thereunto belonging situate or being in the State of North Carolina.

3. "For a second defense, this defendant denies each and every allegation of the said complaint which has not hereinbefore been admitted, explained or modified, and says the same are not true.

4. "For a third defense, defendant alleges, as it is informed and believes, that at about the time named in the complaint the plaintiff was injured on a railroad corporation which was chartered, organized and doing business under and by virtue of the laws of the State of North Carolina, which owned a railroad, together with the tracks, locomotives, cars, stations, depots and appurtenances, situate and being entirely in the State of North Carolina, to the South Carolina line, and that the plaintiff was injured at or about the time named in the complaint by attempting to get off of one of the moving trains of said railroad company which was then in motion, and that the said injuries did not occur on the line of this defendant, as alleged in the complaint.

5. "For a fourth defense, defendant alleges that heretofore the plaintiff, by his next best friend, Thomas Carson, brought his action in the Superior Court in and for the County of Gaston, in the State of North Carolina, against the railroad upon whose line he was injured, to wit: against the Atlanta and Charlotte Air Line Railroad Company, a corporation duly chartered, organized and doing business under and by virtue of the laws of the State of North Caro-

lina, for the same cause of action upon which he is now suing, and that said cause was duly tried in the said Court, and judgment of nonsuit was duly rendered against the plaintiff, from which judgment an appeal was duly taken by the plaintiff to the Supreme Court of the State of North Carolina, and the said Supreme Court of said State thereafter duly rendered its decision and judgment, adjudging and determining that the plaintiff was guilty of contributory negligence and affirming the judgment of nonsuit which had been rendered in the Superior Court of the County of Gaston, in the State of North Carolina, against the plaintiff.

6. "Defendant further alleges: that the injury about which the plaintiff is complaining occurred in the State of North Carolina, and the laws of said State provides as follows: 'If an action shall be commenced within the time prescribed therefor, and the plaintiff be nonsuited, or a judgment therein be reversed on appeal, or be arrested, the plaintiff, or if he dies, and the cause of action survive, his heir or representative may commence a new action within one year after such nonsuit, reversal or arrest of judgment.' And the defendant further alleges, that after the judgment or nonsuit hereinbefore mentioned had been granted and had been affirmed by the Supreme Court of the State of North Carolina, and within the time fixed by the statute of the said State of North Carolina, the plaintiff began a second action in the said Superior Court for the County of Gaston, in the State of North Carolina, against the Atlanta and Charlotte Air Line Railway Company, for the same cause of action, and that judgment of nonsuit was again rendered in the said Court against the plaintiff, from which judgment the plaintiff duly appealed to the Supreme Court of said State, and the said Supreme Court thereafter duly rendered its decision and filed its opinion affirming the judgment of nonsuit which had been granted against the plaintiff in the said Superior Court of Gaston, in the State of North Carolina. That the laws of the said State of North Carolina allege that the

matters and things herein sought to be litigated are *res judicata,* and it pleads said judgments of nonsuit as an estoppel against this action.

7. "For a fifth defense, this defendant alleges: That the injuries which occurred to plaintiff, and for which he is suing this defendant, occurred to him in the State of North Carolina, and that heretofore he brought his action in the Superior Court for the County of Gaston, in the State of North Carolina, against this defendant, to recover damages therefor, and that said cause was duly tried in the said Court, and judgment of nonsuit duly rendered against the plaintiff, from which judgment an appeal was duly taken by the plaintiff to the Supreme Court of the State of North Carolina, and the said Supreme Court, in the said State, thereafter rendered its decision and filed its opinion affirming the judgment of nonsuit which had been rendered against the plaintiff in the said cause in the Superior Court in the County of Gaston, in the State of North Carolina. That the laws of the said State of North Carolina provide as follows: 'If an action shall be commenced within the time prescribed therefor, and the plaintiff be nonsuited, or a judgment therein be reversed on appeal, or be arrested, the plaintiff, or if he dies and a cause of action survives, his heir or representative may commence a new action within one year after such nonsuit, reversal or arrest of judgment.' That after the judgment of nonsuit had been duly rendered in the Superior Court of the County of Gaston, in the State of North Carolina, and affirmed by the Supreme Court of said State, as herein alleged, and within the time fixed by the statute of the said State of North Carolina, the plaintiff began his second action in the said Superior Court for the County of Gaston, in the State of North Carolina, against this defendant for the same cause of action, and that judgment of nonsuit was again rendered in the said Court against the plaintiff, from which judgment the plaintiff duly appealed to the Supreme Court of said State, and said

Supreme Court thereafter duly rendered its decision and filed its opinion affirming the judgment of nonsuit which had been granted in said cause against the plaintiff in the said Superior Court for the County of Gaston, in the State of North Carolina, as hereinbefore alleged. And this defendant alleges that the questions herein sought to be litigated are *res judicata,* and it pleads the said judgments of the Courts of North Carolina as an estoppel to this action.

8. "For a sixth defense, this defendant alleges: That the injury which occurred to the plaintiff, and for which he brings this action, occurred to him in the State of North Carolina, and that having elected to bring his actions against the defendant in the State of North Carolina and under the laws of said State, where the injury occurred, he is estopped from bringing this action against this defendant in this State, and should not now be allowed to proceed with the same.

9. "For a seventh defense, defendants alleges: That the injuries which occurred to the plaintiff occured to him in the State of North Carolina, and that he thereafter brought suit against this defendant in the courts of this State, and was duly nonsuited, which said judgment of nonsuit was duly affirmed on appeal to the Supreme Court of said State, and that thereafter he brought his second action against this defendant within one year after the judgment of nonsuit was rendered against him, which said judgment was duly affirmed by the Supreme Court of this State, and that more than one year has elapsed since said judgment of nonsuit was rendered against the plaintiff in the said State of North Carolina after having brought his first action, and upon non-suit as hereinbefore stated, do not now obtain, and he is barred and estopped from bringing this action.

10. "That more than three years have elapsed since the injury occurred to plaintiff, and under the laws of the State of North Carolina, where the injury occurred, he is now barred from bringing this action.

11. "Defendant further alleges that plaintiff has failed to pay the costs of the actions in which he was interested in the courts of the State of North Carolina, and this Court should not now allow the plaintiff to proceed with this action until the costs of the actions in the State of North Carolina have been paid.

12. "For a ninth defense, the defendant alleges: That the injuries about which the plaintiff is now complaining, happened in the State of North Carolina, and that under the laws of said State it is negligence for a person to alight or attempt to alight from a moving train, moving as rapidly as the train from which the plaintiff attempted to alight was moving, and the plaintiff, by his own negligence, recklessness and want of care in alighting or attempting to alight from this train when it was moving as rapidly as it was, and when he knew, or by the exercise of due care he ought to have known that it was so moving, contributed as a proximate cause to his injuries. And defendant alleges that the injuries about which the plaintiff is complaining was contribued to as a proximate cause by his own negligence, recklessness and want of care in alighting or attempting to alight from a train moving as rapidly as this was, and at the time and place where plaintiff did attempt to alight.

13. "For a further defense, the defendant alleges: That the plaintiff, when he attempted to alight from this train, moving as rapidly as it was, and at the time and place at which he did attempt to alight, assumed all risks of being injured thereby.

14. "For a further defense, this defendant alleges that under the law of North Carolina the plaintiff is required to bring his action for personal injury within three years from the time the cause of action accrues to him, and that plaintiff did within the three years fixed by the statute of North Carolina, bring his action by his next friend against the Atlanta and Charlotte Air Line Railway Company in the Superior Court of the County of Gaston, in the State of

North Carolina, to recover damages for the same injuries on account of which he is now bringing this action, and that in said suit plaintiff was duly nonsuited, and that he duly appealed from the said judgment of nonsuit to the Supreme Court of the State of North Carolina, and that thereafter the Supreme Court of said State rendered its judgment and affirmed the judgment of nonsuit which had been granted by the Superior Court of Gaston county, for the State of North Carolina. The defendant further alleges that there is a statute in the State of North Carolina which allows the plaintiff to bring a second action on the same cause of action, provided he does so within one year after he is nonsuited, and defendant alleges that the plaintiff did within the time fixed and limited by the said statute of the State of North Carolina, bring his second action against the Atlanta and Charlotte Air Line Railway Company to recover damages for the same cause of action for which he had brought his first suit in the said Superior Court of Gaston county, and for which he is now bringing the present suit, and that on the trial of the cause in the said second suit a judgment of nonsuit was duly rendered against him by the said Superior Court of Gaston county, in the State of North Carolina, the court adjudging 'that plaintiff take nothing by his action and that the defendant go without pay and recover its costs.' That from the said judgment, the plaintiff duly appealed to the Supreme Court of the State of North Carolina, and that said court thereafter duly affirmed the said judgment which had been rendered against the plaintiff in the said Superior Court for Gaston county, and that more than one year has elapsed since said judgment was last rendered, and that more than three years have elapsed since the cause of action arose to plaintiff, and this defendant pleads the said statutes of North Carolina and the said judgments of the Superior Court of Gaston county, in the State of North Carolina, and of the Supreme Court of said State, as a bar and as an estoppel to this action.

"Wherefore, defendant prays that the complaint herein be dismissed with costs."

The plaintiff introduced evidence responsive to the allegations of the complaint. At the close of all the evidence the defendant moved for a direction of verdict upon the grounds among others: that the cause of action was barred under the laws of the State of North Carolina as shown by the records of the Superior Court of Gaston county, N. C., and the records of the Supreme Court of that State and copies of various statutes, all of which were introduced in evidence. The Circuit Judge reserved his decision upon these matters and allowed the case to go. the jury. The jury found a verdict for the plaintiff, after which the Circuit Judge made an order setting aside the verdict and dismissing the complaint, upon the ground that under the statutes and decisions of the State of North Carolina the action was barred. From this order the plaintiff has appealed, upon the following exceptions:

1. "That his Honor erred in holding this action is barred under the statutes and decisions of the State of North Carolina; the error being, generally, that there is nothing in such statutes to sustain such holding; and, particularly:

(a) "His Honor could not, and consequently did not intend to hold that the testimony of the case barred the plaintiff under the light of the law of that State; in a case of this kind, under the law of North or South Carolina, a judge having no power to dismiss a complaint upon conflicting testimony as to alleged negligence and contributory negligence.

(b) "He could not, and accordingly did not intend to hold that plaintiff is barred by a statute of limitation of that State, because no statute of limitation of that State can apply to an action brought in this State.

(c) "If he meant that this same cause of action had been determined between the same parties upon the same testimony in North Carolina, and that, therefore, plaintiff

is barred from again maintaining such action in the courts of this State, he was in error, because: (1) This is the first action of this plaintiff against this defendant, a South Carolina corporation. (2) The testimony was not the same; and, besides, to hold it to be the same would be exercising the function of the jury. (3) Even if this action were between the same parties and for the same cause of action, there is nothing in the law of North Carolina introducted in evidence which would prevent this action being instituted and prosecuted in that State; there never having been a determination, anything more than nonsuits, in that State, and no final judgment having been entered thereon; and defendant having failed to produce any statute which would prohibit the renewal of the action after the second nonsuit.

(2) "That his Honor having failed and refused to grant defendant's motion for a new trial, and it being error to dismiss the complaint, as a matter of law, as was done by his Honor, plaintiff should by this court be adjudged to have the right to enter judgment upon the verdict as rendered."

The facts of the case are, that the plaintiff was injured on the 27th of August, 1902, in the town of Gastonia, N. C., by stepping or falling from the train of the defendant and being struck or run over by the train. In November, 1902, plaintiff sued as a minor by his next friend in the Superior Court of Gaston county, N. C., and in 1903 an order of nonsuit was signed by the Presiding Judge as follows:

"At the close of the plaintiff's evidence the defendant moved for a nonsuit; motion sustained and plaintiff excepted and appealed."

Upon hearing the appeal the Supreme Court of North Carolina affirmed the decision of the court below.

The plaintiff then immediately began another action in Gaston county, N. C., for the same injury. The defendant answered, setting up the prior judgment above referred to as a bar to the action. At the conclusion of the plaintiff's evidence on motion of the defendant, the court ordered a non-

suit. The plaintiff then appealed to the Supreme Court, which, by a *per curiam* order, without opinion, rendered its decision to the effect that there was no error in the record of the proceeding of the Superior Court.

After the above decision this action was begun in Spartanburg county, in this State, and the main issue involved by this appeal as we view the case is: If the plaintiff's alleged cause of action is barred under the laws of North Carolina, is it also barred here? And is it barred under the laws of North Carolina?

This court in the case of *Dennis* v. *A. C. L. R. R. Co.,* 70 S. C., 254, 49 S. E. 869, and also in the case of *Sawyer et al.* v. *Macauley,* 18 S. C., 549, held in effect that if the right of a plaintiff was extinguished in the jurisdiction in which the right arose it was gone everywhere, and an action could not be instituted in another jurisdiction where, under similar circumstances, the right would have continued. It is further held that if the right still exists, but the remedy to enforce same is barred by the laws of the State where the right was created by some statute of limitations, that this statute of limitations would not follow the right into another jurisdiction and effect it there, the distinction being that the law of the State in which a right is created governs the creation, existence and extinction of that right, but that laws which relate purely to the remedy are no part of the right, and hence are not binding upon courts of other jurisdictions when passing upon the rights of the parties. From this it follows that an adjudication upon the merits to the effect that the plaintiff never had a cause of action, made by a court of competent jurisdiction, is final and conclusive, and will be respected and followed by all other courts in actions between the same parties or their privies concerning the matter.

The Supreme Court of North Carolina, upon the first appeal, determined that the negligence of the plaintiff was the cause of the injury he sustained. This decision was

16—84

rendered upon an appeal from an order granting a nonsuit. A nonsuit is not usually a judgment upon the merits. It was originally given against the plaintiff when he introduced insufficient evidence to support a verdict, or when he refused or neglected to proceed to the trial of the cause, after it had been put at issue. It is different, however, where the plaintiff is nonsuited or a verdict is directed because the evidence introduced by the plaintiff proves affirmatively as a matter of law that he is not entitled to recover. The difference is that in one instance the plaintiff fails to make out his case; in the other instance he proves affirmatively facts which as a matter of law show that he is not entitled to recover. Is this such a case?

The case at bar is very similar to *Ordway* v. *Boston & M. R. R.,* 45 Atl., 243; 69 N. H. 429, from which we quote: "A judgment upon an involuntary nonsuit order on the ground that plaintiff's own evidence conclusively showed that plaintiff knew of the danger which caused his injury, and with such knowledge he assumed the risk therein as a matter of law, is a judgment on the merits, which is a bar to another action by the same party on the same cause."

The Supreme Court of North Carolina in passing upon the first appeal used the following language:

"In this case the plaintiff attempted to alight from a moving train and was in the very act of alighting, when there was a sudden jerk of the train, which might have been expected under the circumstances, and he was thrown under the cars and injured. The train at the time was running with increasing speed and the act of alighting from it at such a time was little, if anything, short of recklessness. It is unfortunate indeed that the plaintiff was thus injured, but it was due at least to his own misfortune and not to any fault which can be imputed to the defendant as a direct cause of it. The plaintiff's act, according to his own version of the facts, was the proximate cause of the injury. This seems to us to be well settled as the law of such a case. By his evidence,

the plaintiff shows affirmatively and beyond any dispute or controversy, if his evidence is to be taken as true, and it must be so regarded upon a demurrer to it, that his own negligence, was, in law, the cause of the injury he sustained, and the rule laid down in *Neal* v. *Railroad, supra,* and *Bossent* v. *Railroad,* 32 N. C., 974, applies.

"Although our decision that the plaintiff's own negligence was the proximate cause of the injury is in itself sufficient to sustain the ruling of the court below, we have discussed the question of the defendant's negligence, as that of the plaintiff's negligence could not have arisen unless there was negligence on the part of the defendant. It was necessary, therefore, to determine first whether the defendant had been negligent in causing the injury to the plaintiff, *Gordon* v. *Railroad, supra.*

"The ruling of the court below upon the motion to dismiss was right."

The above then is an adjudication by a court of competent jurisdiction that the plaintiff has proven that he has no cause of action.

The plaintiff contends that notwithstanding this, his right is not finally determined or extingusihed, because of a provision of the North Carolina Code as follows: "If an action shall be commenced within the time prescribed therefor and the plaintiff be nonsuited or a judgment therein be reversed on appeal, or be arrested, the plaintiff may commence a new action within one year after such nonsuit, reversal or arrest of judgment."

It would appear to be the object of the above statute to extend the period of limitations where an action was commenced within the time limit and after the time limited by the statute had expired, the plaintiff had been cast in his action by some decision not affecting the merits. But however this may be, the plaintiff has brought a second action in the courts of North Carolina and been again nonsuited, and we do not think the position is tenable that he can bring an

indefinite number of actions and be nonsuited an indefinite number of times upon grounds involving the merits of his cause of action, provided in each instance a new action is brought within one year of the preceding nonsuit.

This, in effect, disposes of all the grounds of appeal. We do not consider it necessary to pass upon the question of whether the defendant in this action is the same corporation as the organization bearing the same name in North Carolina and authorized to do business under the laws of that State. The fact is that the plaintiff cannot maintain his action against this defendant for an act committed by a separate defendant in North Carolina without showing privity between them, and if the record in this case shows that, then it shows that there is such privity that the judgment rendered upon the same cause of action is *res judicata* and conclusive of the issue involved in this appeal.

It is therefore ordered that the judgment of the Circuit Court be affirmed.

MR. CHIEF JUSTICE JONES AND MR. JUSTICE GARY *concur in the result.*

MR. JUSTICE WOODS, *concurring:* I concur in affirming the judgment of the Circuit Court.

If it were an open question, I would concur in the opinion that where the plaintiff proves facts showing that as a matter of law he is not entitled to recover, a judgment of nonsuit on the merits of the cause has the same effect as a judgment on a verdict or other final judgment on the merits, and is a complete defense to another action. This doctrine is held in some of the States, but it has been held otherwise by our Court. *Baker* v. *Beliesseline,* 4 Mc., 472; *McEwen* v. *Mazyck & Bell,* 3 Rich., 210; *Whaley* v. *Stevens,* 24 S. C., 479. The decisions of the Supreme Court of North Carolina are to the same effect. *Tussey* v. *Owens* (N. C.), 61 S. E., 180, and cases cited. This seems to be also the view of the

Supreme Court of the United States. *Homar* v. *Brown,* 16 How., 352, 14 L. Ed. 970; *Life Ins. Co.* v. *Broughton,* 109 U. S., 121, 27 L. Ed., 878; *U. S.* v. *Parker,* 120 U. S., 69, 30 L. Ed., 601, 604.

The accident happened and the injury was received in the State of North Carolina. The Supreme Court of North Carolina, in two actions brought by the plaintiff on the same alleged cause of action, has held that the facts adduced by the plaintiff on the trial conclusively showed that he was not entitled to recover and affirmed the judgment of nonsuit. The position that the evidence here was substantially different from that introduced on the trials in North Carolina, we do not think it is borne out by the record. There are, it is true, slight differences in detail, but this material fact appears in all the evidence, namely, that the plaintiff was engaged in the act of getting off a moving train, and his undertaking to do so was a proximate cause of his injury. The plaintiff's case depends upon the law of North Carolina, and the Supreme Court of that State has held in the plaintiff's own case, and other cases, that such conduct is contributory negligence and defeats a recovery. The language of Justice Walker, speaking for the court, is conclusive: "But even if there was evidence of the defendant's negligence in the case, we do not think there was any error in the ruling of the court below, because the plaintiff, upon his own showing, was guilty of contributory negligence which was the proximate cause of his injury. When he found that the train was in motion and its speed steadily increasing, he should have notified the conductor of his situation, so that the train could be stopped, or he should have waited until it reached the next station before he attempted to get off. His failure to do so, and his attempt to alight from the train which was then running at the rate of three or four miles an hour, was such negligence on his part as defeats his right of recovery."

I do not think it is necessary to construe or decide upon the applicability of the North Carolina statute, providing for

a second action to be brought within one year after a judgment of nonsuit; and in the absence of necessity, this Court should refrain from making the attempt.